**Deborah Lynn LANGLOIS, et al., Plaintiffs,**

v.

**DEJA VU, INC., a foreign corporation, et al., Defendants.**

**No. C96–331Z.**

United States District Court, W.D. Washington.

Sept. 24, 1997.

Eugene N. Bolin, Jr., Matthew D. Dubin, Karen A. Kalzer, Law Offices of Eugene N. Bolin, Jr., Seattle, WA, for plaintiffs.

Barbara J. Duffy, Ronald E. Beard, Barry Neal Mesher, Lane, Powell, Spears and Lubersky, Seattle, WA, Jack R. Burns, Burns & Hammerly, P.S., Bellevue, WA, Bradley J. Shafer, Bradley, Shafer & Associates, Lansing, MI, for defendants.

## ORDER

ZILLY, District Judge.

The Court, having reviewed plaintiffs' complaint, out-of-state defendants' motion for summary judgment, plaintiffs' response, out-of-state defendants' reply, plaintiffs' surreply, the Report and Recommendation of the Honorable Wilson, United States Magistrate Judge, the out-of-state defendants' objections, the plaintiffs' objections, the declaration of Eugene Bolin Jr. dated August 22, 1997, and the records and files herein, does hereby find and ORDER:

(1) The court defers a ruling on defendant Acorn Enterprises, Inc., pending a report and recommendation by the Magistrate Judge on the separate motion for summary judgment filed on August 28, 1997, docket no. 745. The Court also defers a ruling on whether attorneys' fees should be awarded to the out-of-state defendants dismissed for lack of personal jurisdiction. The Court requests a supplemental report from the Magistrate Judge on the issue of fees.

(2) Except as provided in paragraph 1 of this order, the Court adopts the Report and Recommendation, docket no. 731, DENIES out-of-state defendants' motion for summary judgment on the lack of personal jurisdiction as to defendants Deja Vu, Inc. and Deja Vu

Consulting, Inc., and GRANTS the motion as to all remaining defendants.

The Clerk of the Court is directed to send uncertified copies of this order to Magistrate Judge Wilson and all counsel of record.

## REPORT AND RECOMMENDATION

WILSON, United States Magistrate Judge.

### I. INTRODUCTION

This case was filed in 1996 and is primarily a Fair Labor Standards Act (FLSA) action. Plaintiffs, who are a representative group of nude and semi-nude dancers, seek back pay and damages for alleged violations of the FLSA. Defendants consist of two groups. The first group of Defendants, who are Washington and Colorado entertainment clubs and residents, have been referred to in this litigation as the "in-state" Defendants. The second group are the remaining Defendants who do not reside in Washington or Colorado. The second group has been referred to as the out-of-state Defendants. The out-of-state Defendants contest this Court's assertion of jurisdiction over them.[1]

On June 16, 1997, out-of-state Defendants filed their motion for summary judgment, arguing that no out-of-state Defendant has the requisite minimum contacts necessary to satisfy a finding of personal jurisdiction.

(Docs.# 657–58). On July 7, 1997, Plaintiffs' counsel filed a response (Doc. # 677), over 288 exhibits, and a sixty-three page affidavit (Doc. # 673) in opposition. Plaintiffs' *memorandum* does not attempt to argue that jurisdiction is proper over each individual out-of-state Defendant named in the complaint; however, Plaintiffs' counsel's *affidavit* does *argue* that jurisdiction is proper in regards to each named out-of-state Defendant.[2] On July 30, 1997, out-of-state Defendants filed a reply in support of their motion for summary judgment. (Doc. # 699). On July 31, 1997, Plaintiffs filed a surreply.[3] (Doc. # 720).

The Court, having considered out-of-state Defendants' motion for summary judgment, Plaintiffs' response, pertinent parts of Plaintiffs' counsel's affidavit, Plaintiffs' exhibits, out-of-state Defendants' reply, Plaintiffs' surreply, and the remaining record, recommends that out-of-state Defendants' motion be DENIED as to Defendants Deja Vu, Inc. and Deja Vu Consulting, Inc. and that the motion be GRANTED as to all remaining Defendants.

### II. BACKGROUND

▉▉▉ Plaintiffs bear the burden of proving that jurisdiction exists as to each out-of-state Defendant. Through the presentation of affidavits and discovery materials, Plaintiffs must prove a prima facie case of jurisdiction as to each and every out-of-state De-

---

1. The out-of-state Defendants are those Defendants that the law firm of Lane, Powell, Spears, and Lubersky have filed a notice of appearance on behalf of. Plaintiffs only oppose the out-of-state Defendants' motion for summary judgment regarding the out-of-state Defendants listed *infra*. In his affidavit, Plaintiffs' counsel asserts that Defendants Acorn Investments, Inc. and Acorn Enterprises, Inc. are out-of-state Defendants that contest jurisdiction. Based on the out-of-state Defendants' motion and their proposed order, it appears that these two Defendants—although Defendant Acorn Enterprises is represented by the Lane, Powell firm—do not contest jurisdiction. Moreover, the docket indicates that Defendant Con–Forbe, Inc. is not represented by counsel; presumably, therefore, this is why the out-of-state Defendants' motion and proposed order omit this Defendant.

2. As Plaintiffs' counsel knows, his affidavit should not include argument. The Court even previously instructed counsel not to file affidavits in opposition to a motion, but rather to make any

such arguments in a properly labelled response. Throughout this litigation, Plaintiffs' counsel has persisted in his ways and has filed argument in affidavit form. In his latest affidavit, he made statements regarding the structure of the out-of-state Defendants which was based on newspaper clippings and other statements that were clearly not based on his personal knowledge. For these reasons, the Court granted out-of-state Defendants' motion to strike counsel's affidavit and certain exhibits. Nonetheless, the Court considered Plaintiffs' arguments contained in the affidavit regarding why jurisdiction was proper as to each of the out-of-state Defendants named in the complaint. **The Court limited itself to the arguments and evidence cited by Plaintiffs' counsel in relation to each out-of-state Defendant in considering whether jurisdiction was proper as to that Defendant.**

3. Because the Court struck Plaintiffs' cross-motion for summary judgment (Doc. # 712), the Court has accepted Plaintiffs' memorandum as a surreply.

fendant. *Fields v. Sedgwick Associated Risks,* Ltd., 796 F.2d 299, 301 (9th Cir.1986); *McGowan v. Pillsbury Co.,* 723 F.Supp. 530, 533 (W.D.Wa.1989) (Zilly, J.) (applying prima facie standard at summary judgment stage). In light of the fact that substantial discovery regarding jurisdiction has taken place in this case, Plaintiffs must present a prima facie case of jurisdiction based on competent evidence. *See, e.g., Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66, n. 9 (3d Cir.1984). Because the FLSA is silent as to personal jurisdiction, the Court must apply Washington State law to determine whether personal jurisdiction exists over the out-of-state Defendants. *See Aviles v. Kunkle,* 978 F.2d 201, 203 (5th Cir.1992); Fed. R.Civ.P. 4(k)(1)(A) (requiring reference to state law when federal law is silent).

Plaintiffs advance three theories for finding that personal jurisdiction exists over the out-of-state Defendants: (1) a traditional minimum contacts theory of specific jurisdiction; (2) a jurisdictional fraud theory; and (3) an economic integration theory. In summary, Plaintiffs' theories rely, in large part, on their counsel's belief that the whole structure of the Deja Vu clubs is fraudulent. As a result, counsel argues that because the Court has jurisdiction over a Washington Defendant, the Court also has jurisdiction (1) over any out-of-state club that bears the Deja Vu name, regardless of whether the club is in Florida, Nevada, or theoretically, even Europe and (2) over any out-of-state individual or corporation with an ownership interest in one of the out-of-state or Washington clubs. Plaintiffs argue, in the main, that the in-state Defendants are, "in reality," one and the same as each and every out-of-state Defendant. Plaintiffs' theories are addressed in turn.

### A. *Minimum Contacts*

 Plaintiffs argue that they have established personal jurisdiction under a traditional minimum contacts *specific* jurisdiction analysis, e.g. that this FLSA action is related to the alleged purposeful contacts of each out-of-state Defendant with Washington State. (Doc. #677 at 40). Washington State's long-arm statute extends jurisdiction to the fullest extent permitted by the United States Constitution. *Chan v. Society Expe-*

ditions, Inc., 39 F.3d 1398, 1405 (9th Cir. 1994), *cert. denied,* 514 U.S. 1004, 115 S.Ct. 1314, 131 L.Ed.2d 196 (1995); *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 380 (9th Cir.1990), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Under Washington and federal law, the test for specific jurisdiction is a three-part test. To exercise personal jurisdiction over any one of the out-of-state Defendants in this action, the following must be proven:

> (1) that the out-of-state Defendant initiated some purposeful contact(s) with the State of Washington; in other words, the out-of-state Defendant's contact(s) must be of such a quality that the contact(s) indicates that the out-of-state Defendant could foresee the possibility of having to defend in a court in Washington;

> (2) that Plaintiffs' claims arose from the out-of-state Defendant's contact(s); and

> (3) that the exercise of personal jurisdiction would be reasonable, considering Washington's interest in adjudicating the dispute versus the burden on an out-of-State Defendant of defending in Washington.

*See Tyee Construction Co. v. Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245 (1963). If the above three elements are proven, then this Court's exercise of jurisdiction over an out-of-state Defendant would not offend notions of "fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

 Under the specific jurisdiction analysis, jurisdiction can be founded solely on one purposeful contact with Washington State, as long as the cause of action arose from that contact and the assertion of jurisdiction would be reasonable. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Doe v. Am. Nt'l Red Cross,* 112 F.3d 1048, 1052 n. 7 (9th Cir.1997) (reaffirming Shute and requiring the cause of action to have arisen "but-for" the purposeful contact); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 415 (9th Cir.1977). Although one contact may be sufficient for jurisdiction, the quality and nature of the

contact must be such that it would not offend notions of "fair play and substantial justice" to invoke the Court's jurisdiction based on the contact. *Colonial Leasing Co. v. Pugh Bros. Garage,* 735 F.2d 380 (1984). A mere execution of a contract with a Washington corporation, for example, is insufficient to establish this Court's personal jurisdiction over an out-of-state Defendant. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.,* 757 F.2d 1058 (9th Cir.1985) (rejecting argument that letter of credit was sufficient for jurisdictional purposes, even though the contact was related to the lawsuit). If jurisdiction is asserted based on a contract that an out-of-state Defendant negotiated with a Washington corporation, then this Court must examine the negotiations and the contemplated future consequences of the contract to determine that the out-of-state Defendant purposefully availed himself of the privilege of conducting business in Washington. *FDIC v. British–American Ins. Co.,* 828 F.2d 1439, 1443 (9th Cir.1987).

■ Even if an out-of-state Defendant initiated purposeful contact giving rise to this lawsuit, jurisdiction may still be unreasonable as to that Defendant. The burden shifts to the out-of-state Defendant to show that the forum is unreasonable. The following factors are relevant in determining the reasonableness of subjecting an out-of-state Defendant, who has had purposeful contact(s) related to the lawsuit at issue, to suit in Washington: (1) the extent of the Defendant's purposeful contacts; (2) the burden on the Defendant of having to defend in Washington; (3) the extent to which jurisdiction conflicts with the sovereignty of Defendant's resident state; (4) Washington's interest in adjudicating the dispute; (5) which forum is the most efficient for resolution of the dispute; (6) Plaintiff's interest in choosing the Washington forum; and (7) the existence of an alternative forum to adjudicate Plaintiffs' claims. *British–American Ins. Co.,* 828 F.2d at 1442.

■ Although the minimum contacts analysis in Washington is straightforward, Plaintiffs' statement of the law comes with a twist. Plaintiffs ask this Court to find that each of the out-of-state Defendants is an "employer" of Plaintiffs under the FLSA. After making this determination, Plaintiffs maintain that all "employers" should be called into Washington to answer the FLSA allegations contained in Plaintiffs' complaint. (Doc. # 677 at 42, 52). In essence, Plaintiffs claim that a determination that an out-of-state Defendant is an employer is dispositive of personal jurisdiction.

■ Plaintiff's spin on the law of personal jurisdiction is flawed. The theory knocks heads with the United States Constitution. The Court has no authority to render judgment against a party that the Court lacks personal jurisdiction over. *See, e.g., American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 590 (9th Cir.1996) (stating that "liability [under a federal statute] is not to be conflated with amenability to suit in a particular forum"). Even if a congressional statute paints as broad a liability stroke as possible, the individuals subject to liability under such a statute would still only be amenable to suit in the jurisdiction where it would be "fair" to call them into court. Therefore, this Court must first find that jurisdiction exists over an out-of-state Defendant before the Court labels the out-of-state Defendant an "employer" under the FLSA.[4]

Moreover, in order for this Court to determine who is an employer, the Court would have to decide issues regarding the economic realities of the work environment, including whether *each and every* out-of-state Defendant had the power to (1) hire and fire Plaintiffs; (2) supervise and control Plaintiffs work schedules or other conditions of employment; (3) determine the rate and method of payment; or (4) maintain employment records. *See, e.g., Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir.1983). This determination is not possible at this time and may be best

---

4. Although the Court rejects Plaintiffs' suggestion, if Plaintiffs submitted evidence that an individual out-of-state Defendant was an "employ-er," the Court considered the evidence under a traditional minimum contacts or alter ego analysis.

suited to resolution at trial, after a jury first decides that Plaintiffs are employees under the FLSA.[5]

### B. *Jurisdictional Fraud/ Alter Ego theory*

Under these theories, Plaintiffs assert that jurisdiction is proper over an out-of-state Defendant if either (1) an out-of-state Defendant conspired with another to defeat jurisdiction; (2) an out-of-state Defendant is one and the same as a Washington Defendant.

#### 1. Jurisdiction Based on Fraud

 In support of jurisdiction based on fraud, Plaintiffs argue that out-of-state Defendants have intentionally constructed their "empire" to avoid jurisdiction in any one court over all of the out-of-state Defendants. Plaintiffs claim as follows:

> **While Defendants may or may not have failed to observe the formalities with respect to each separate Defendant business entity**, it is their inequitable use of those entities to facilitate an illegal compensation scheme in contravention of federal law, and to avoid the principals' obligations, as "employers" to provide Plaintiffs with certain wages, which result in a "fraud" in the jurisdictional sense, upon the Plaintiffs.
>
> . . . .
>
> Defendants have intentionally and systematically fragmented their Enterprise by creating numerous entities to control and operate each club in the United States. . . . These entities are owned and controlled by Defendants, and are totally subject to the control of the Enterprise through "consulting agreements" and similar arrangements. . . . The purpose of these arrangements is to avoid Deja Vu's statutory duties with regards to the Plaintiffs, and to defeat any assertion of jurisdiction over the Enterprise by a single court, anywhere.

(Doc. # 677 at 38) (emphasis removed and added).

The Court finds Plaintiffs' proposed change to the law of personal jurisdiction based on "jurisdictional fraud" to be unpersuasive. The notions of "fair play and substantial justice" that the United States Supreme Court has stated is necessary to a finding of personal jurisdiction is based on States Constitution. Plaintiffs urge this Court to ignore the Constitution based on Plaintiffs' conclusory allegations of fraud contained in the affidavit their counsel submitted, the memorandum in opposition, and the surreply. This Court is unwilling to ignore the Constitution based on Plaintiffs, suspicion of fraud. *See Hewitt v. Hewitt*, 78 Wash.App. 447, 896 P.2d 1312, 1316 (1995) (disproving of conspiracy jurisdiction e.g. jurisdiction over a nonresident conspirator based on a resident coconspirator's acts).

#### 2. Alter Ego Jurisdiction

In the main, under this analysis, Plaintiffs argue that the Court should pierce the corporate veil of *every* out-of-state Defendant and find that jurisdiction exists based on the presence of the Washington Defendants in this forum or because another out-of-state Defendant is amenable to suit in Washington. Essentially, Plaintiffs' alter ego theory requires a finding that the corporate veil of the in-state and/or out-of-state Defendant corporations should be pierced and held to be one and the same entities. In their memorandum, Plaintiffs appear to concede that they have not presented evidence sufficient to pierce the corporate veil of most of the out-of-state Defendants under traditional principles. However, because this is a FLSA action, Plaintiffs claim that the Court should pierce the corporate veil based on a "mere scintilla of fraud." (Doc. # 677 at 32).

Out-of-state Defendants argue that this Court should not recognize the alter ego

---

**5.** For the record, the Court notes that Plaintiffs' counsel's arguments on this point are not fairly supported by the exhibits he has submitted. For example, counsel cites generally to his affidavit for his assertions that each and every out-of-state Defendant is an employer, including stating that "[n]o individual Club, in the State of Washington or elsewhere, has the authority to authorize com-

pliance with the FLSA by paying dancers a wage." (Doc. # 677 at 60). Counsel's lengthy affidavit and exhibits submitted clearly do not support this assertion. To say the least, counsel would be unable to prove on a summary judgment motion, on the record submitted, that the out-of-state Defendants are employers under the FLSA.

doctrine of jurisdiction because Washington Courts have not expressly approved of the doctrine. *See Huebner v. Sales Promotion, Inc.*, 38 Wash.App. 66, 684 P.2d 752, 756–757 (1984) (discussing the alter ego doctrine of jurisdiction, but rejecting the doctrine based on the facts of the case). Although the Court has been unable to find a Washington case which has premised jurisdiction based on the alter ego doctrine, Washington Courts have also not rejected the doctrine as a basis for jurisdiction under the State's long-arm statute. Instead, Washington Courts have continuously stated that the State's long-arm statute extends jurisdiction to the *limits* of federal due process.

In determining the limits of federal due process, the Court analyzes federal case law, and most importantly, the law of the United States Supreme Court and the Ninth Circuit Court of Appeals. Although Plaintiffs argue that the alter ego doctrine is a recognized basis for personal jurisdiction and out-of-state Defendants argue that it is not, *amazingly* Plaintiffs have not discussed whether the Supreme Court or the Ninth Circuit have approved of the doctrine. In fact, Plaintiffs have cited no Ninth Circuit authority in favor of their doctrines, but instead have relied on opinions from other jurisdictions.

In *Cannon v. Cudahy Packing Co.*, 267 U.S. 333, 335, 45 S.Ct. 250, 250–51, 69 L.Ed. 634 (1925), the Supreme Court held that service of process on a subsidiary—that is "dominated" both "commercially and financially" and is controlled "mainly through the same individuals" as its parent corporation—does not constitute effective service on a parent due to "corporate formalities." *See also Consolidated Textile Corp. v. Gregory*, 289 U.S. 85, 88, 53 S.Ct. 529, 530, 77 L.Ed. 1047 (1933) (applying Cannon to attempted service on a wholly owned subsidiary). Citing *Cannon*, the Ninth Circuit in *Transure, Inc. v. Marsh and McLennan. Inc.*, 766 F.2d 1297, 1299 (9th Cir.1985), held that the "existence of a parent-subsidiary relationship is [also] insufficient to establish personal jurisdiction" over a parent corporation, based on the contacts of a subsidiary, even when there is some evidence that the parent controls the subsidiary. Alternatively, in *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 302 (9th Cir.1986), the Ninth Circuit held

that "a parent corporation's ties to a forum do not create personal jurisdiction over the subsidiary." *Id.* (citing *Uston v. Hilton Casinos, Inc.*, 564 F.2d 1218, 1219 (9th Cir. 1977)).

The above pronouncements, however, state only a general rule. Jurisdiction may still be proper over a parent corporation, based on the contacts of its subsidiary, if "but-for" the existence of the subsidiary, the parent would control and conduct the activities of the subsidiary in the forum state. *See Chan*, 39 F.3d at 1405 n. 9 (1994); *see also In re Telectronics Pacing Systems, Inc.*, 953 F.Supp. 909, 911 (S.D.Ohio 1997) (approving minimum contacts analysis regarding the parent-subsidiary relationship based on concepts of attribution and merger). The Ninth Circuit has held on different occasions that jurisdiction over a subsidiary may be imputed to the parent as long as prima facie evidence is presented indicating that the subsidiary and the parent are the alter egos of one another. *See e.g., Wells Fargo & Co.*, 556 F.2d at 422; *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 715 (C.D.Cal.1996) (citing *Certified Building Products, Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir.1976) and stating that "under federal law governing the exercise of in personam jurisdiction, if a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, the Court may pierce the 'corporate veil' jurisdictionally and attribute 'contacts' accordingly"). In order to find an alter ego relationship and pierce the corporate veil, a party must prove "'(1) that there is such a unity of interest and ownership that ... separate personalities no longer exist and (2) that failure to disregard [the separate entities] would result in fraud or injustice." *American Telephone & Telegraph Co.*, 94 F.3d at 588 (stating the veil piercing test in a federal subject matter jurisdiction case). For jurisdictional purposes, a court should only pierce the corporate veil "**'in exceptional circumstances.'**" *Calvert v. Huckins*, 875 F.Supp. 674, 678 (E.D.Cal. 1995) (recognizing alter ego doctrine of jurisdiction) (emphasis added). *Cf. Torchmark Corp. v. Rice*, 945 F.Supp. 172, 177 (E.D.Ark. 1996) (setting a lower standard for piercing the corporate veil for jurisdictional purposes

and requiring a showing of either a "shell" corporation *or* fraud, not both).

In three major cases, the Ninth Circuit has addressed the degree of evidence necessary to find an alter ego relationship for jurisdictional purposes. In *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir.), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980), the Ninth Circuit addressed whether personal jurisdiction over three foreign corporations based on the contacts of a domestic subsidiary should be had under the alter ego doctrine. Plaintiff, a California automobile dealer, sued British Leyland Motors, Inc. (BLMI), a United States importer, and three other British corporations in federal court in California. *Id.* at 1176. Of the three foreign Defendants, one, British Leyland International (BLI), owned BLMI; the other two, British Leyland Motor Corp, Ltd. (BLMC) and British Leyland Ltd. (BLL), were holding companies. Jurisdiction was proper over BLMI. The Ninth Circuit addressed whether jurisdiction should be had over the foreign corporations as alter egos of BLMI.

The Ninth Circuit noted that there was some intermingling between BLMI and the foreign corporations, that the president of BLMI also served as the president of BLL for four years, and that the record supported an inference that the foreign companies controlled BLMI in certain major policy decisions. *Id.* at 1177. Nonetheless, the Court held that the facts were "insufficient to make BLMI an 'alter ego' or 'agent' of any of the British corporations so as to make any of them subject to jurisdiction solely through BLMI's presence in the United States." *Id.* The Court noted that none of the foreign corporations controlled "the internal affairs of BLMI or determine[d] how it operate[d] on a daily basis." *Id.*

In *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389 (9th Cir.1984), the Court applied the alter ego doctrine and ruled that jurisdiction existed over both nonresident defendant corporations and individuals based on the doctrine. Plaintiff distribution company—"Flynt"—sued eighteen corporations and partnerships, including their two owners, Leon and Alfred Harvey—"the "Harvey Corporations"—due to an alleged violation of a distribution agreement by five of the corpo-

rations. Five of the Harvey Corporations entered into a distribution agreement with Publishers Distribution Company (PDC), where PDC agreed to distribute the Harvey Corporations' magazines nationally. Plaintiff purchased PDC and amended the agreement with the five Harvey Corporations. subsequently, the five Harvey Corporations violated the agreement by not shipping certain magazines to California. Plaintiff sued the five companies, and the other thirteen nonsignatories to the agreement, in federal court in California. The district court exercised jurisdiction over all of the Defendants.

On appeal, the Ninth Circuit held that jurisdiction was proper as to all of the Defendants based on the contacts of the five signatories to the agreement. Initially, the court found that the five Harvey Corporations who signed the agreement had sufficient minimum contacts with California based on both the execution of the distribution agreement with Plaintiff, a California corporation, and by shipping magazines to California. *Id.* at 1393. The court then addressed whether jurisdiction was proper over the thirteen nonsignatories and two owners based on an alter ego theory of jurisdiction. *Id.* The court upheld the district court's decision to pierce the corporate veil of the five Harvey Corporation signatories and ruled that jurisdiction was then proper over all of the Defendants based on jurisdiction over the five. According to the court, the fact that Leon and Alfred Harvey were the "sole shareholders of the corporations and the sole partners of the partnerships ... and converted the assets of the various corporations and partnerships for their own use and dealt with them as if they were one," was sufficient to pierce the corporate veils and find jurisdiction. *Id.* at 1393–94.

Most recently, in *American Telephone & Telegraph Co.*, cited *supra*, the Ninth Circuit again applied the alter ego doctrine to a parent-subsidiary corporate relationship. Plaintiff sued Keystone Resources, Inc., which operated a metal reclamation facility in California, in California district court pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act. Plaintiff also sued GBL, a Belgium corpora-

tion. GBL indirectly, through its wholly owned United States subsidiary, the Lambert Business Group (LBG), owned 80% of Defendant Keystone's stock. Plaintiff claimed that jurisdiction was proper over GBL because jurisdiction was proper over Keystone. In support of piercing the corporate veil of both LBG and GBL, Plaintiff asserted that GBL controlled Keystone through LBG, thereby establishing an alter ego relationship between Keystone and GBL. *Id.* at 589. Among other things, plaintiff argued that GBL controlled Keystone based on the fact that GBL held a majority of the seats on Keystone's board, a GBL employee attended Keystone's meetings, LBG and Keystone filed joint tax returns, and Keystone had "zero working capital" by January 1982 due to GBL's investment. *Id.* at 588 n. 2.

The Ninth Circuit addressed whether jurisdiction over GBL was proper. The court noted that GBL's "majority interest in Keystone [did] not suffice to confer specific jurisdiction." *Id.* at 590. The court then turned to the alter ego doctrine. The court noted that if LBG and Keystone were mere sham corporations, then GBL would be amenable to suit in California. The Court ruled that the plaintiff had failed to prove that the relationship between GBL, LBG, and Keystone was anything more than a normal parent-subsidiary relationship.

Despite the recognition by the Ninth Circuit of an alter ego theory of jurisdiction in the above cases, the Court is convinced that the analysis actually applied by the Ninth Circuit is a minimum contacts analysis. In all of the cases, the Ninth Circuit first asked whether one of the defendants was amenable to suit in the forum court based on minimum contacts or residency. Once this finding was made, the next logical question the court asked was: who, if anyone, controlled the defendant such that exercise of jurisdiction would not offend traditional notions of fair play and substantial justice because the parties are actually one and the same? If the evidence supported a finding that a nonresident defendant (either an individual or corporation) set up a sham corporation that purposefully directed activities towards the forum state, then jurisdiction over that defendant was "fair and reasonable" because the defendant was obviously aware that its

purposeful contacts could result in a lawsuit in the forum state. Regardless, however, of whether this Court recognizes the alter ego analysis as a separate doctrine or as part of a minimum contacts analysis, the Ninth Circuit has held that the alter ego analysis is nonetheless an appropriate one to engage in when determining whether jurisdiction exists over a nonresident defendant.

## C. *Economic Integration Theory*

Under this final theory of jurisdiction, Plaintiffs claim that when a corporate structure, including parents, subsidiaries, and other businesses, are integrated and are "in reality" one corporation, then minimum contacts for one of the affiliates constitutes minimum contacts for the "enterprise" as a whole. (Doc. # 677 at 21) This appears to be Plaintiffs' primary theory in support of jurisdiction and has received more discussion from Plaintiffs than their alter ego theory. (*See* Doc. # 720 at 7–10 (stating that Plaintiffs do not "seek here" to pierce corporate formalities, but rather attempt "to show that all of the Defendants are economically integrated")). Plaintiffs argue that jurisdiction is proper if an "enterprise" of several businesses exist and the enterprise (1) is fragmented, (2) lacks complete administrative organization, (3) lacks financial independence between the members of the enterprise, (4) lacks independent decision making authority, (5) holds itself out as one single enterprise, (6) files single or joint tax returns, and (7) utilizes common attorneys and accountants. Primarily, Plaintiffs claim that the consulting agreements of the in-state and out-of-state Defendants evidence an enterprise of one "commonly controlled enterprise."

Plaintiffs' enterprise theory is a novel theory of jurisdiction which, although receiving some discussion in the case law, has been discussed by courts in the context of minimum contacts and/or alter ego principles. The Court is unclear how Plaintiffs' proposed formulation of the "enterprise theory of jurisdiction" would work and what type of showing a plaintiff would need to make on the above factors to prove the existence of an enterprise. For example, would the Burger King corporation and its franchisees consti-

tute an integrated enterprise, such that a franchisee in Delaware could sue a franchisee in Ohio in Washington court? Despite the absurdity of such a result, it seems a possibility under Plaintiffs' jurisdictional theory. *See, e.g., United Electrical Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1096 (1st Cir. 1992) (noting the "conspicuous lack of support in the case law for transplanting this theory from the liability context to the jurisdictional context"). Plaintiffs' argument that out-of-state and in-state Defendants are engaged in a common business enterprise that would subject them to jurisdiction in Washington State is best addressed under an alter ego or minimum contacts analysis.[6]

### III. ANALYSIS

In applying the law as stated above, it was extremely difficult, in many cases, to determine the "facts" upon which Plaintiffs were attempting to base jurisdiction. The blame for this difficulty lies at the feet of Plaintiffs' counsel. Counsel did not present coherent arguments and facts in support of jurisdiction under each theory of jurisdiction submitted. Many of his arguments and "facts" advanced in support of jurisdiction—contained in his affidavit—were premised on irrelevant information under any theory of jurisdiction. At times, it appeared that Plaintiffs' counsel was merely providing deposition summaries to the Court in support of jurisdiction. Moreover, as Defendants aptly noted in their reply, his affidavit was riddled with inaccuracies or misleading statements, some of which he readily admits were in error.[7] With this in mind, the Court addresses whether Plaintiffs have made a prima facie showing of jurisdiction as to the out-of-state Defendants based on what the

Court reasonably inferred were the facts and arguments advanced by counsel in support of jurisdiction over each out-of-state Defendant.

### A. Jurisdiction Based on Contacts with Certain Washington Defendants

■■■ Although never argued in *specific* terms, Plaintiffs appear to contend that jurisdiction is proper over all of the out-of-state Defendants based on their alleged common "control" of nine of the Washington Defendants. (*See* Doc. # 673 at 47–55). At one time, Plaintiffs' counsel asserted that the Washington Defendants and out-of-state clubs have common "control groups" (Doc. # 677 at 29), but now states that he did not intend to make such a claim. (Doc. # 720 at 8). Nonetheless, the heart of Plaintiffs' argument in favor of jurisdiction is the general assertion that out-of-state Defendants Harry Mohney, Jim St. John, Stanley Marks, and Donald and Susan Krontz, among others, control all of the in-state Defendants, particularly the nine clubs listed by Plaintiffs' counsel in his affidavit. (*See* Doc. # 720 at 14–15 (providing for the "major" out-of-state players and stating that "Mr. Marks probably qualifies as an 'employer' himself under the "FLSA" for all Deja Vu clubs around the nation.... Mr. Marks' activities are at, or very near, the epicenter of ownership, operation or control of the entire Deja Vu Enterprise")). Plaintiffs' support for their theory of jurisdiction is lacking.

Plaintiffs have simply failed to submit competent evidence that any of the nine in-state Defendants cited by counsel in his affidavit— Defendant Consolidated Bookkeeping, Inc., Defendant Acorn Investments, Inc, Defendant Deja Vu–Everett–Federal Way, Inc., Defendant Deja Vu–Lake City, Inc., Defen-

---

**6.** After a thorough review of the record, discussed *infra*, the Court also notes that Plaintiffs have failed to prove a prima facie case for "enterprise jurisdiction" under Plaintiffs' "factors." In fact, the evidence cited in support of these "factors" is either lacking or misleading. For example, the record is devoid of any support for Plaintiffs' assertion in their memorandum that in-state and out-of-state Defendants file consolidated tax returns, lack financial independence, and lack autonomy.

**7.** The Court notes that out-of-state Defendants in their reply have requested that the Court impose

sanctions against Plaintiffs' counsel for filing a "bad faith" affidavit under Fed.R.Civ.P. 56(g). Plaintiffs' affidavit has been stricken in large part. However, the Court is unable to conclude that Plaintiffs' counsel intentionally, as opposed to negligently, made the numerous inaccuracies contained in his affidavit. The Court also cannot say on the record before it that the affidavit was made "solely" to delay these proceedings. Accordingly, the Court DENIES out-of-state Defendants' request for costs and fees under Rule 56(g).

dant Little Darlins Entertainment, Inc., Defendant Pam Jam Enterprises, Inc., dba Razzmatazz, Defendant Deja Vu–Lynnwood, Inc., Defendant Deja Vu–Spokane, Inc., and Defendant Deja Vu Colorado Springs—"are subject to the control of the Out–Of–State Defendants in matters regarding employment, finances, strategy, advertising, procedures, and other matters." (Doc. # 720 at 26). Plaintiffs' counsel was provided ample opportunity to depose all of these "central" Defendants; instead of citing deposition testimony in support of his assertion that the Washington Defendants are "controlled" by the out-of-state Defendants, he simply has made self-serving statements in his briefs and affidavits submitted to the Court regarding his view of the "empire." Although out-of-state Defendant Harry Mohney may have, at one time, owned stock in some of the nine listed Defendants, there is no indication that he utilized his ownership to control the operation of the in-state Defendants or that this cause of action is in any way related to that stock ownership. (*See, e.g.,* Doc. # 699, Ex. D (Depo. of Defendant Berns at 21 (stating that Defendant Mohney is not involved in the operation or control of the in-state Defendants)); (Depo. of Defendant Forbes at 326:35 (noting that Defendant Mohney is not involved in the operation or control of the in-state Defendants))). In the absence of any competent evidence to the contrary, this Court is unable to conclude that, in general, personal jurisdiction is proper over all of the out-of-state Defendants based on the alleged "control" of the nine Washington Defendants cited by counsel in his affidavit.

Although Plaintiffs have failed to meet their burden on this issue, the Court also notes that out-of-state Defendants have affirmatively refuted Plaintiffs' assertions. In their reply in support of their motion, Plaintiffs provide the affidavit of David Schindel, an accountant for both the Washington and out-of-state Defendants. (Doc. # 699, Ex. A at 1–2). Mr. Schindel notes that there is a "controlled group" of Washington Defendants for income tax purposes, which consists of seven of the in-state Defendants cited by Plaintiffs' counsel: Defendant Deja Vu–Lynnwood, Inc., Defendant Acorn Investments, Inc., Defendant Deja Vu Colorado Springs, Inc., Defendant Deja Vu Everett-

Federal Way, Inc., Defendant Deja Vu Spokane, Inc., Defendant Deja Vu Lake City, Inc. and Defendant Consolidated Bookkeeping, Inc. (*Id.*). It appears uncontroverted that the listed Washington Defendants and the out-of-state Defendants maintain their financial, operational, and ownership independence:

> [E]ach member of the Washington controlled group remains a separate corporate entity, operates as a completely separate financial unit, and enjoys complete financial independence from each other. No Out–of–State Defendant is within this controlled group. . . .
>
> Each member . . . consists of an adequately capitalized corporation, each of which honors corporate form and formalities; neither assets nor funds are commingled. . . .
>
> [T]here is no parent-subsidiary relationship between the Washington controlled group and any Out–of–State Defendant. . . .
>
> [N]o member of the Washington controlled group owns or has any ownership interest in any of the Out–of–State Defendant corporations..
>
> [T]he Washington controlled group's financial and managerial decisions are controlled by Roger Forbes, and enjoy decision making independence from the Out-of-state Defendants..
>
> No Out–of–State Defendant associated with Harry V. Mohney "infuses" funds into any of the corporations in the Washington controlled group . . .
>
> . . . .

(*Id.* at 3–4).

In all respects, Plaintiffs have not supported any claim—if they even truly intended to make such a claim—that jurisdiction is proper over the out-of-state Defendants based on contacts attributable to the in-state Defendants.

**B. Jurisdiction Over Individual Out–of–State Defendants**

*Defendant 1: Defendant Deja Vu, Inc.*

Defendant Deja Vu, Inc. is related to Defendant Deja Vu consulting, Inc., discussed

infra as Defendant # 36. Prior to 1994, Defendant Deja Vu, Inc. had in place consulting agreements with various clubs, including the in-state Defendants. In or around 1994, Defendant Deja Vu Consulting, Inc. was created as part of a plan of reorganization with Defendant Dynamic Industries, Inc., discussed *infra* as Defendant # 19. At that point in 1994, or sometime thereafter, it appears that Defendant Deja Vu Consulting, Inc. negotiated its own consulting agreements with the in-state Defendants.

Plaintiffs assert that jurisdiction is proper over this Defendant Nevada corporation because (1) Defendant, through its former attorney Lee Klein, is responsible for creating the dancer performance lease at issue in this case and came to Washington to explain the leases to the Washington clubs and dancers (Doc. # 677, Ex. # 5 at 61:19–22, 65:16–22, 91:2–20); (2) in "flash" memoranda, Defendant instructed "all managers" to add a provision to all "showgirls contracts" which required the dancers to turn over "all fees and tips" if she was declared to be an employee (Doc. # 673, Exs.# 9, # 19) and directed the managers to have dancers fill out certain forms when "leasing" space (Doc. # 673, Ex. # 15); (3) Defendant communicated with club managers throughout the country with flash memoranda (Doc. # 673, Exs.# 9–20), many of which dealt with employment law and how to treat employees (Doc. # 673, EX. # 13); (4) Defendant uses common advertising for all clubs, including Washington clubs; (5) Defendant sells merchandise to various clubs (Doc. # 673, Ex. # 16); (6) Defendant organizes national contests involving dancers from different clubs (Doc. # 673, Ex. # 17); and (7) Defendant organizes national charity events (Doc. # 673, Ex. # 18).

■ In regards to their alter ego argument, Plaintiffs have provided no evidence regarding the corporate structure or capitalization of Defendant Deja Vu, Inc. Plaintiffs have also set forth no facts indicating that Defendant is controlled by another Defendant individual or corporation or that fraud or an injustice would result if the corporate formality was not observed. As a result, the Court declines to pierce Defendant's veil based on an alter ego analysis. Moreover, even if the Court were to pierce Defendant's veil, Plaintiffs have failed to indicate precisely who is behind the veil.

■ However, Plaintiffs appear to have presented a prima facie case for jurisdiction over Defendant based on minimum contacts—but only on the contacts related to Defendant's consulting practices with the Washington Defendant clubs (contacts # 1 through # 3). Although dancers from Washington clubs may participate in national dancing competitions and charity events sponsored by Defendant and Defendant might circulate a magazine in Washington State, there is no indication that these contacts with Washington are purposeful, in that Defendant was placed on notice that it could be subject to having to defend a suit in Washington based on the contacts or that the present lawsuit arose from the contacts.

The other contacts initiated by Defendant, which are related to the consulting agreements, provide a sufficient basis for jurisdiction, although the determination is admittedly a close one. Plaintiffs' showing that Defendant, or one of its agents Mr. Klein, was responsible for creating a version of the lease agreement that was, at one time, used in the Washington Clubs and that Defendant communicated this lease and subsequent revised leases, and other employment issues, to the Washington Defendant clubs in "flash" memoranda appear to be contacts that may have given rise to this lawsuit. One can reasonably infer from the exhibits submitted by Plaintiffs that Defendant played a central role in determining how to treat dancers, i.e. as either dancers or employers.

In response, out-of-state Defendants apparently contend that the above contacts were not purposeful contacts with the Washington forum. According to out-of-state Defendants, the Washington and Colorado clubs and the out-of-state clubs are operated by different management: Defendant appears to set policy for the out-of-state clubs and Defendant Roger Forbes and Defendant Consolidated Bookkeeping, appear to set policy for the in-state clubs. Apparently, Defendant Forbes started managing the in-state Defendant clubs beginning in 1986 or 1987. (Doc. # 699, Depo. of Defendant St.

John at 12:7–23). As a result, the deposition testimony cited by out-of-state Defendants indicates that the in-state managers of individual clubs did *not* receive the flash memoranda from Defendant, although Defendant Forbes, through Defendant Consolidated Bookkeeping, received the flashes. (*Id.*, Ex. D (Depo. of Defendant St. John at 196: 23–25, 197: 1–10)). In his own discretion, Defendant Forbes decided whether to follow the information contained in the flash memoranda as it related to the in-state clubs or to disregard the information by "round filing" it. Out-of-state Defendants contend that in-state Defendants—through the discretion exercised by Defendant Forbes—were therefore not contractually required to utilize the information. (*Id.*, Ex. F (Depo. of Defendant Forbes at 236–38 (stating that he throws away the flashes and is not sure if he has ever sent a flash to one of the in-state Defendant clubs)); Ex. D (Depo. of Defendant Dunitz (stating that the Washington Defendant Clubs do not utilize the flash memoranda or the Deja Vu "management" books))). If out-of-state Defendants are correct, and the flash memoranda provided by Defendant were only for informational purposes, then Defendant's contacts would appear to be fortuitous, and not purposeful. If a contract standing alone is insufficient to indicate a purposeful contact (*see Burger King*), then surely a contact which is at most advisory in nature cannot amount to a purposeful contact.

Despite out-of-state Defendants' arguments, it appears, on the whole, that a genuine issue exists regarding whether in-state Defendants were contractually required to utilize the information provided by Defendant. One could reasonably infer that in-state Defendants were required to follow the memoranda from the fact that consulting agreements were in place with the in-state Defendants, Defendant received fees from the agreements based on their work performed, and the dancer performance leases were adopted by the in-state Defendant clubs and revised. Most importantly and regardless of whether Washington Defendants were actually required to use the information, Plaintiffs have presented a prima facie case in support of an inference that *Defendant could reasonably foresee*—based on its con-

sulting agreements with the in-state Defendants and the employment advice it gave pursuant to those agreements—that it might be subject to having to defend a lawsuit in Washington based on those contacts.

Having found that Plaintiffs have presented a prima facie case of purposeful lawsuit-related contacts by Defendant, the next question is whether the exercise of jurisdiction over Defendant would be reasonable. Defendant has not proven that the exercise of jurisdiction over it would be unreasonable. The burden on Defendant of litigating in Washington appears small; Defendant directs its activities nationally, and appears to have the resources to come into Washington to defend this suit. Moreover, Washington State has a strong interest in resolving this case based on the need to protect, to the fullest, its working residents. If Defendant has been directing the in-state Defendants regarding how to treat Plaintiffs, then Washington has an interest in bringing them into the State to answer Plaintiffs' complaint. Accordingly, out-of-state Defendants' motion to dismiss should be denied as to this Defendant.

### Defendant 2: Harry Mohney

Plaintiffs assert that jurisdiction is proper over this Michigan resident based on a variety of factors. (Doc. # 673 at 7–9). In the main, Plaintiffs contend that Defendant is the number one man, so to speak, in the "Deja Vu Empire." Defendant is a "consultant" to Defendant Deja Vu Consulting, Inc., which in turn provides consulting services to all or some of the Deja Vu Clubs around the nation. Plaintiffs claim that Defendant Deja Vu, Inc. has consulting agreements in place with all of the Washington Defendants that allows for the payment of "independent" consultants, including Defendant, directly. (Doc. # 673, Ex. # 22). Plaintiffs maintain that because these agreements provide for the possible payment of Defendant directly by the Washington Defendants, then the Court should exercise personal jurisdiction over Defendant. Plaintiffs also maintain that Defendant has in the past personally loaned money to certain Washington Defendants. (Doc. # 673, Ex. # 24).

■ Plaintiffs have made an insufficient showing in support of personal jurisdiction over Defendant Mohney. (Doc. # 673 at 7–9). Plaintiffs' exhibits in support of his assertion that Defendant could be paid consulting fees directly by the Washington Defendants are inconclusive. First, there is no indication that the consulting agreements were executed and are in effect; the documents in Exhibit # 22 are not signed by a representative of Defendant Deja Vu, Inc. and only evidence a possible agreement with three of the Washington Defendants that was in place in 1992. Second, there is no indication that Defendant has done any consulting with the Washington Defendants; his deposition is to the contrary. Third, there is no indication that Defendant's contacts with Washington are purposeful and that they relate to the cause of action in this lawsuit. Even if Defendant was a party to a contract that required performance in Washington by one of the parties to the contract, the existence of the contract does not amount to purposeful availment.

■ Moreover, the evidence of loans made by Defendant Mohney in 1993 to certain Washington Defendants does not prove that Defendant purposefully availed himself of the protection of Washington law. The Court notes, although Plaintiffs fail to argue, that the promissory notes contain references to Washington law as governing the interpretation and enforcement of the notes. Even though Washington law is cited as governing the interpretation of the promissory notes, this alone is insufficient to convey jurisdiction. Finally, Plaintiffs' cause of action is not related to these contacts.

In light of the foregoing, Plaintiffs have failed to make; a prima facie case in support of jurisdiction over Defendant Mohney. Plaintiffs have merely thrown a plethora of "facts," some relevant and others irrelevant, for the Court to weed through. Accordingly, the Court recommends that Defendant Mohney be dismissed due to lack of personal jurisdiction.

*Defendant 3: The Revocable Trust of Harry Mohney*

Plaintiffs maintain that jurisdiction is proper over this trust (Doc. # 673, Ex. # 25), but provide absolutely no facts in support of jurisdiction. (Doc. # 673 at 9). The mere fact that much of Defendant Mohney's income goes to the trust and that his children are beneficiaries of the trust, does not support a finding that this Court has jurisdiction over the trust. Plaintiffs have not argued that the trust is legally insufficient. Moreover, there is no indication that the res originated in Washington or that portions of the res have been used in Washington. In all respects, no contacts have been established between this trust and Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 4: Jason Mohney*

Plaintiffs assert that jurisdiction is proper over this Defendant because (1) he is the son of Defendant Harry Mohney; (2) a beneficiary of Defendant Harry Mohney's revocable trust; and (3) a manager of a Deja Vu Club in California. (Doc. # 673 at 9).

Plaintiffs have not established any basis for jurisdiction over Defendant Jason Mohney. Defendant may be a beneficiary of a Defendant trust, but there is no indication that the trust is a sham. There is also no indication that Defendant has ever had contacts with Washington State, let alone purposefully availed himself of the protection of Washington State law. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendants 5–9: Defendant Harry Mohney's Other Children—Mary, Beth, Stephane, Sharla, Justin, and Taylor*

Plaintiffs assert that jurisdiction is proper over these Defendant children because they are (1) children of Defendant Harry Mohney; and (2) beneficiaries to certain of Defendant Harry Mohney's trusts. (Doc. # 673 at 10).

Again, Plaintiffs have not established the legal insufficiency of the trusts. Most importantly, Plaintiffs have not proven that the children have had any contacts with Washington State. Accordingly, Defendant children should be dismissed due to lack of personal jurisdiction.

*Defendants 10–17: Durand Trusts # 1 Through # 8*

Plaintiffs assert that jurisdiction is proper over these Defendant trusts (Doc. # 673, Ex.

#27) because (1) the Durand Trusts apparently own approximately fourteen companies, including some out-of-state Deja Vu clubs, Defendant Deja Vu Consulting, Inc., Defendant Dynamic Industries (Doc. #673, Ex. #21 at 312:10–12) and Defendant Modern Bookkeeping (Doc. #673, Ex. #27 at 95:19–23, 92:2–13); and (2) Defendant Stanley Marks has served as trustee from 1989 until the present.

Plaintiffs' showing is again deficient. Plaintiffs present numerous factors that allegedly support jurisdiction, but have failed to present to the Court a coherent basis for exercising jurisdiction. Plaintiffs do not challenge the legal sufficiency of the trusts. Plaintiffs have also not established that the trusts own property in Washington State or have otherwise purposefully availed themselves of the protection of Washington State law. Although the trusts may receive income from some of the Deja Vu companies, there is no indication that the res originates from Washington or that the trustees or beneficiaries have had any contacts with Washington State. Plaintiffs have also not proven that the trustee Defendant Marks operates or controls any Defendant corporation through the trust. Accordingly, Defendant trusts should be dismissed due to lack of personal jurisdiction.

### Defendant 18: Michigan Reef Development Corp.

Plaintiffs assert that jurisdiction is proper over this Michigan Defendant corporation because (1) in 1989, Defendant loaned $100,000 to Defendant Deja Vu, Inc. (Doc. #673, Ex. #28); (2) in 1993, Defendant sublet some Michigan property to Defendant Deja Vu, Inc. (Doc. #673, Ex. #29); and (3) on different occasions, a plane and car have been seen on the property. (Doc. #673 at 12).

Plaintiffs evidence in support of jurisdiction over this Defendant is patently deficient. Plaintiffs have offered no evidence regarding the corporate structure or capitalization of Defendant. Plaintiffs have also produced no evidence of contacts that Defendant may have had with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

### Defendant 19: Dynamic Industries

Plaintiffs assert that jurisdiction is proper over this Defendant Delaware Corporation holding company based on alter ego principles. In 1994, the sole director and shareholder of Defendant corporation was Defendant Marks. (Doc. #673, Ex. #31). In 1994, Defendant corporation was also the sole shareholder of Defendant Deja Vu, Inc. (*Id.*). On May 4, 1994, Defendant Marks, on behalf of Defendant Deja Vu Inc., elected Defendant Jim St. John as Director of Defendant Deja Vu, Inc. (*Id.*).

Thereafter, on August 1, 1994, Defendant corporation, Defendant Deja Vu, Inc. and Defendant Deja Vu Consulting, Inc. entered into a "plan of reorganization." (Doc. #673, Ex. #32). Defendant corporation acquired "all the issued and outstanding shares of stock in the Wholly–Owned Subsidiaries and consulting." (*Id.* at 2). Defendant corporation became the owner of all shares in Defendant Deja Vu, Inc., Defendant Deja Vu Consulting, Inc., Defendant Deja Vu of Nashville, Inc. (a Tennessee corporation), and Defendant Showgirls of San Diego, Inc. (a California corporation), among others. (Doc. #673, Ex. #32:1).

At first glance, there appears to be a close case for jurisdiction over Defendant based on alter ego principles. For example, Defendant Deja Vu, Inc. and Defendant corporation appear to have similar interests in that Defendant owns all of the stock in Defendant Deja Vu, Inc. Nonetheless, the Court is unwilling to pierce Defendant's corporate veil on the facts before it. There is no indication that Defendant Deja Vu, Inc. or Defendant are undercapitalized or do not function independently. *See Clark v. Matsushita Electric Industrial Co., Ltd.,* 811 F.Supp. 1061, 1067 (M.D.Pa.1993) (stating that mere fact that defendant is a wholly-owned subsidiary of a parent does not justify piercing the corporate veil of the subsidiary to reach the parent). Plaintiffs have not proven that Defendant controls the actions of Defendant Deja Vu, Inc. Moreover, Plaintiffs have not shown that fraud or an injustice would result if Defendant Deja Vu, Inc.'s or Defendant's corporate formalities are preserved. Accordingly, De-

fendant should be dismissed due to lack of personal jurisdiction.

### Defendant 20: MIC Limited

Plaintiffs assert that jurisdiction is proper over this Michigan Defendant corporation because (1) in 1993, Defendant filed a certificate to do business in Washington, which was approved and then renewed in 1995 (Doc. # 673, Exs.# 35–37); (2) in 1995, the corporation, as a landlord, leased Washington state property to a Washington corporation (Doc. # 673, Ex. # 34); (3) Defendant has loaned money in the past to Defendant Modern Bookkeeping and Defendant Deja Vu of Saginaw, Inc. (Doc. # 673, Exs.# 38–40); and (4) in 1995, Defendant appointed Defendant Harry Mohney as agent to purchase specified property in California. (Doc. # 673, Ex. # 41).

Plaintiffs have not made a prima facie case in support of jurisdiction. First, the fact that loans were made by Defendant to other Defendants and that Defendant Harry Mohney was appointed as an agent on one occasion are legally insufficient to demonstrate commonality of interest with any other corporation sufficient to pierce the corporate veil.

Second, Plaintiffs have not established minimum contacts with Washington State. Defendant may own property in Washington that it leases, but there is no indication that it has purposefully availed itself of the protection of Washington law in entering into the agreement. Under *Burger King*, the landlord-tenant agreement, itself, is insufficient to establish jurisdiction, without additional evidence regarding the negotiations of the contract, where it was executed, or the contemplated course of conduct regarding the agreement. Moreover, the agreement specifies that it shall be governed by Michigan law. (Doc. # 673, Ex. # 34:24). In addition, the fact that Defendant has been granted authority to conduct business in Washington does not indicate purposeful availment of the protection of Washington law. *See Washington Equipment Manuf. Inc. v. Concrete Placing Inc.*, 85 Wash.App. 240, 931 P.2d 170, 172–73 (1997) (holding that certificate of authority to do business in Washington does not equal consent to do business in Washington). Finally, Plaintiffs have made no showing that this cause of action arose from the above contacts. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

### Defendant 21: Pasttime Coin Machine Co., Inc.

Plaintiffs assert that jurisdiction is proper over this Michigan Defendant corporation because (1) "Pastime is involved in one way or another with nearly every Club in the Deja Vu Enterprise" (Doc. # 673 at 14); (2) Defendant borrowed money from Defendant Deja Vu, Inc. in 1992 (Doc. # 673, Ex. # 42); and (3) in 1996, Defendant, along with other individuals and Defendants, investigated the possibility of purchasing adult businesses in California. (Doc. # 673, Ex. # 43).

Plaintiffs have not made a prima facie case in support of jurisdiction. First, Plaintiffs have made an insufficient showing to pierce Defendant's corporate veil or to find that Defendant is another Defendant's alter ego. The mere fact that the corporation loaned money to another Defendant or communicated with another Defendant does not evidence an alter ego relationship. Second, Plaintiffs have produced no evidence that Defendant has had any contacts, let alone purposeful contacts, with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

### Defendant 22: Modern Bookkeeping, Inc.

Plaintiffs argue that jurisdiction is proper over this Michigan Defendant corporation because (1) Defendant "provides centralized bookkeeping, accounting, and legal documentation for most of the persons and entities related in any way to the Deja Vu Enterprise" (Doc. # 673 at 14); (2) Defendant purportedly has a contract with each "of its clients similar to that which it executed in 1994" with Defendant Deja Vu, Inc. (Doc. # 673 at 14, Ex. # 44); (3) one of Defendant's accountants, Angela Swank, has communicated with Washington Defendant Consolidated Bookkeeping, on different occasions (Doc. # 673 at 15, Ex. # 43 at 30:22–31:15); and (4) Defendant's sole director and president is Defendant Paulette Held. (Doc. # 673 at 16, Ex. # 46 at 9:1–3; 188:10–14).

Plaintiff's showing is insufficient to establish jurisdiction. First, no evidence has presented that Modern Bookkeeping's veil should be pierced. According to the deposition testimony cited by Plaintiffs' attorney in his affidavit, Defendant appears to function as a business entity. Moreover, no evidence has been presented regarding Defendant's capitalization or corporate formalities that would suggest that Defendant's identity has merged with that of another Defendant. Second, Plaintiffs have presented absolutely no evidence that Defendant had any contacts with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 23–31: The Lansing Trusts #1 Through 8 and Paulette Held*

■ Plaintiffs assert that jurisdiction is proper over these out-of-state Defendant trusts and their trustee because (1) Defendant Paulette Held is the trustee (Doc. #673, Ex. #46 at 48:24) and Defendant Harry Mohney's children are beneficiaries of the trust (Doc. #673 at 17); (2) Defendant Held does not know a lot about the functioning of the trust, although she does make sure that funds are maintained (Doc. #673, Ex. #46 at 51:13–16); and (3) Defendant Held has been to Washington State on three occasions for Christmas parties. (Doc. #673, Ex. #46 at 176:25–177:6).

Plaintiffs showing in support of jurisdiction is lacking. First, Plaintiffs have not shown that the trust is deficient in any legal respect. Although its trustee, Defendant Held, is unaware of all the legal ramifications of the trust, it is apparent that she still performs her job as trustees by maintaining the res. Second, Plaintiffs have not established any contacts between the trusts or Defendant Held and Washington State. The actions of Defendant Held, in traveling to Washington State for purposes of pleasure, does not indicate purposeful availment necessary to subject either her or the Defendant Trusts to the jurisdiction of this Court.

*Defendant 32: Jim St. John*

■ As with most of the out-of-state Defendants, it is unclear on what basis Plaintiffs are claiming jurisdiction is proper over this Defendant. Instead of making coherent, reasoned arguments, Plaintiffs present a deposition summary in support of jurisdiction and primarily raise the following grounds: (1) Defendant is the CEO of Defendant Deja Vu, Inc.; (2) Defendant is the CEO of Defendant Pasttime Coin Machine Co.; (3) Defendant is the sole director of Defendant Deja Vu Consulting, Inc. (Doc. #673, Ex. #49 at 157:23); (4) Defendant has visited Washington and Defendant Little Darlins entertainment club on two or three occasions (Doc. #673, Ex. #47 at 68:22–23); and (5) Defendant owns 4% of the stock in Defendant Deja–Vu, Lynnwood (Doc. #673, Ex. #47 at 73:20–25).

Plaintiffs have not made a prima facie case in support of jurisdiction over Defendant. First, although the Court has found jurisdiction over Defendant Deja Vu, Inc. to be proper, there appears no reason presented why the Court should pierce the corporate veil and find jurisdiction over Defendant. There is no showing made by Plaintiffs that Defendant and Defendant Deja Vu Consulting, Inc. have merged into one identity or that preserving the corporate formality would result in fraud or an injustice.

Second, Plaintiffs have made no showing that Defendant has purposefully availed himself of the protection of Washington law under a traditional minimum contacts analysis. Defendant's limited stock ownership in a Washington Defendant and his visits to Washington are contacts, but they are not purposeful contacts. Moreover, Defendant's contacts are not related to Plaintiffs' cause of action.

*Defendants 33–34: Donald and Suzanne Krontz*

■ Plaintiffs' arguments and evidence in support of jurisdiction are as follows:

> Suzanne Krontz has long been employed in various capacities in the Deja Vu Enterprise, along with her husband. She has also executed contracts on behalf of Deja Vu and/or the Ontario Deja Vu Club.... Also see discussions of Mr. Krontz throughout the instant affidavit.

(Doc. #673 at 26).

Needless to say, Plaintiffs have not made a prima facie case in support of personal jurisdiction over Defendants. There has been no

attempt made by Plaintiffs to find jurisdiction over these individuals based on an alter ego analysis. Moreover, it is clear that Plaintiffs cannot prove minimum contacts with Washington State based on the above "facts"—Plaintiffs have not even provided evidence to support their assertion that Ms. Krontz has been employed by numerous Deja Vu entities. Accordingly, Defendants should be dismissed due to lack of personal jurisdiction.

*Defendant 35: Stanley Marks*

 Plaintiffs again provide a deposition summary in support of jurisdiction; a summary which contains irrelevant information and apparently asserts that jurisdiction is proper over this Defendant simply because he was in Washington State for a New Years Eve party on one occasion. (Doc. # 673, Ex. # 51 at 53:22–23). Plaintiffs have not provided an alter ego analysis in support of jurisdiction. In addition, Plaintiffs have not established that Defendant purposefully availed himself of the protection of Washington State law by attending the party. Travel through a state, even perhaps vacationing for a month, does not subject a traveller to jurisdiction in a foreign state based on that person's isolated contact, especially under a specific jurisdiction analysis. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 36: Deja Vu Consulting, Inc.*

Plaintiffs assert that jurisdiction is proper over this Michigan Defendant corporation because: (1) Defendant loaned "up to $2,000,-000" to a nonDefendant to operate "an adult entertainment business" (Doc. # 673, Ex. # 52) and also entered into a consulting agreement and license agreement with the nondefendant (*Id.*); (2) in 1996, Defendant Deja Vu, Inc. filed an "Assignment of Trademarks transferring all of Deja Vu, Inc.'s right, title, and interest in certain Deja Vu trademarks, to Deja Vu consulting, Inc." (Doc. # 673 at 27, Ex. # 53); and (3) Defendant has consulting agreements in place with Washington Defendants and since 1992, "Defendant Deja Vu, Inc. and its predecessor, Deja Vu, Inc., have charged Washington Defendants at least $2,537,800 in 'consulting and management fees'" (Doc. # 673 at 28, Ex. # 54).

Plaintiffs showing in support of personal jurisdiction is, again, minimal. If Defendant is a "core" Defendant in Plaintiffs' rejected "enterprise" theory, this fact has not been made clear to the Court. Under the facts presented by Plaintiffs, they do not argue a basis for alter ego jurisdiction. No showing has been made regarding Defendants' corporate structure, its capitalization, or its internal make-up to determine whether Defendant is an alter ego of Defendant Deja Vu, Inc. or another Defendant in this action over which this Court has jurisdiction.

 However, Plaintiffs have made a prima facie case for personal jurisdiction based on minimum contacts. There seems to be no dispute that Defendant has consulting agreements in place with the in-state Defendants and receives fees from those agreements. As discussed in regards to Defendant Deja Vu, Inc. (discussed *supra* as Defendant # 1), Defendant apparently sends flash memoranda on employment issues and the employment relationship of dancers to in-state Defendants Forbes and Consolidated Bookkeeping, Inc. In 1996, for example, Defendant sent a flash to Defendants Forbes and Consolidated regarding revising the dancer performance leases at issue in the lawsuit. (*See* Doc. # 673, Ex. # 19 at Bates Number WA02 13973 (directing clubs to have dancers fill out revised dancer performance lease forms)). Based on these contacts, which this lawsuit has arisen from, jurisdiction over Defendant appears to be reasonable for the reasons discussed in regards to Defendant Deja Vu, Inc. Accordingly, out-of-state Defendants' motion should be denied as to this Defendant.

*Defendant 37: Eyefull, Inc.*

 Plaintiffs claim that jurisdiction is proper over this California Defendant corporation (Doc. # 673 at 28–29) because: (1) in 1990, Defendant Deja Vu, Inc. loaned money to Defendant (Doc. # 673, Ex. # 55); (2) in 1993, Defendant entered into a consulting agreement with Defendant Deja Vu, Inc. (Doc. # 673, Ex. # 56); (3) in 1993, Defendant entered into an advertising agreement with Defendant Deja Vu, Inc. (Doc. # 673, Exs. # 57–58); and (4) in 1996, Defendant,

along with other Defendants and nonDefendants, investigated the possibility of buying adult entertainment businesses located in California. (Doc. # 673, Ex. # 59).

The evidence presented to the Court in support of personal jurisdiction is, again, lacking. The fact that Defendant associates and engages in business with other Defendants is irrelevant to the issue of minimum contacts with Washington State and provides no basis for piercing Defendant's or another Defendant's corporate veil. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 38: Defendant ShowGirls of San Diego, Inc.*

Plaintiffs assert that jurisdiction is proper over this California Defendant corporation (Doc. # 673 at 29–30) because (1) in 1992, Defendant Deja Vu, Inc. "adopt[ed] the name Deja Vu Showgirls of San Diego, Inc. to conduct business in the State of California" (Doc. # 673, Ex. # 62:1) and, in 1993, was a wholly-owned subsidiary of Defendant Deja Vu, Inc. (Doc. # 673, Ex. # 63); (2) in 1993, Defendant Deja Vu Inc. had a consulting agreement in place with Defendant (Doc. # 673, Ex. # 61); (3) Defendant Deja Vu, Inc. has loaned money to Defendant on different occasions (Doc. # 673, Exs.# 66–67, # 69); (4) in 1993, Defendant Deja Vu, Inc. purchased certain stock of Defendant (Doc. # 673, Ex. # 68); and (5) in 1993, the sole director of Defendant was Defendant Donald Krontz. (Doc. # 673, Ex. # 70).

Plaintiffs have failed to prove that Defendant is Defendant Deja Vu Inc.'s alter ego. Although in 1992 Defendant Deja Vu, Inc., created Defendant, as a wholly owned subsidiary, to conduct business in California and has loaned money to Defendant, Plaintiffs have not shown that Defendant does not operate independently of Defendant Deja Vu, Inc. There is also no evidence of inadequate capitalization or failure of Defendant to observe corporate formalities. In addition, Plaintiffs have not shown that Defendant has ever had any purposeful contacts with Washington State or any Washington Club. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 39: Deja Vu of Hammond, Inc.*

Plaintiffs assert that jurisdiction is proper over this Indiana Defendant corporation because (1) Defendant Deja Vu, Inc. has a consulting agreement in place with Defendant (Ex. #74); and (2) Defendant Deja Vu, Inc. has loaned money to Defendant on different occasions.

Plaintiffs have failed to prove that Defendant is Defendant Deja Vu, Inc.'s alter ego. In addition, Plaintiffs have not proven that Defendant has had any contacts with Washington State. Accordingly, Defendant should be dismissed due to lack of jurisdiction.

*Defendant 40: Flint Theatrical Enterprises, Inc.*

Plaintiffs asserts that jurisdiction is proper over this Michigan Defendant corporation because Defendant Deja Vu, Inc. has a consulting agreement in place with Defendant. (Exs. #84; #88). Plaintiffs also maintain that in 1993 Defendant executed a bookkeeping agreement with Defendant Modern Bookkeeping, Inc. (Ex. #88).

Plaintiffs have failed to prove that Defendant is Defendant Deja Vu Inc.'s, or another Defendant's, alter ego. The evidence submitted by Plaintiffs is outdated and inconclusive—consulting and bookkeeping arrangements are legitimate business services. In addition, Plaintiffs have failed to articulate any contacts Defendant has had with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 41: Imagination Corp.*

Plaintiffs assert that jurisdiction is proper over this Defendant Michigan corporation because (1) Defendant Deja Vu, Inc. entered into a contract where Defendant agreed to provide all of Defendant Deja Vu Inc.'s advertising (Doc. # 673, Ex. # 89)—apparently, in a flash memorandum, Defendant Deja Vu, Inc. informed the managers of "all clubs" that Defendant would be providing the advertising for the clubs (Doc. # 673, Ex. # 90); and (2) Defendant was involved in the "investigation" of the purchase of certain California clubs.

■ Plaintiffs have failed to prove that Defendant is an alter ego of Defendant Deja Vu, Inc. or another Defendant. Defendant may provide advertising services to Defendant Deja Vu Inc., who, in turn, advertises en masse for numerous clubs. However, simply because the advertising is for a number of clubs who bear the Deja Vu name does not mean that Defendant is acting as a mere shell for Defendant Deja Vu, Inc.

■ In addition, Plaintiffs have not shown that Defendant has had any contacts with Washington State. The fact that Defendant may create advertising which ends up in Washington State—a fact which has not been proven—does not alone amount to a purposeful contact subjecting Defendant to jurisdiction in Washington State. Plaintiffs have also not proven that the advertising relates to this cause of action. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 42: Cinema X Theatre of Saginaw, Inc.*

Plaintiffs assert that jurisdiction exists over this Defendant Michigan corporation because of a consulting agreement in effect with Defendant Deja Vu, Inc. Plaintiffs point to consulting agreements executed in 1990 and 1992. (Doc. # 673, Ex. # 92). Plaintiffs also note that Defendant, in 1994, paid Defendant Deja Vu, Inc. $50,000 for backdated consulting fees. (Doc. # 673, Ex. # 93).

Plaintiffs have not established that Defendant is Defendant Deja Vu Inc.'s or another in-state Defendant's alter ego. In addition, Plaintiffs have not come forward with any evidence establishing any contact whatsoever that Defendant has had with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 43: Cinema Art Theatre of Bay City, Inc.*

Plaintiffs assert that jurisdiction exists over this Michigan corporation because (1) Defendant, Cinema X of Saginaw, Inc., has ceased to exist and is now allegedly merged with this Defendant (Doc. # 673, Ex. # 96) and (2) in 1995, Defendant St. John was president and sole director of Defendant, succeeding Defendant Harry Mohney. (Doc. # 673, Exs. # 97–# 98).

Plaintiffs have not indicated how this Defendant is somehow an alter ego for another Defendant or Defendant corporation—Plaintiffs have merely shown that in 1995 Defendant St. John was President and sole director of Defendant. In addition, Plaintiffs have not come forward with any evidence establishing any contacts Defendant may have had with Washington State. Accordingly Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant Number 44: Cin–Lan, Inc.*

Plaintiffs assert as evidence of jurisdiction 1990 and 1992 consulting agreements in place with Defendant Deja Vu Inc. (Doc. # 673, Exs.# 99–# 100). As Plaintiffs note, under the terms of the agreements, Defendant was paying, and may still be paying, roughly $32,000 a month to Defendant Deja Vu, Inc. for consulting services.

Plaintiffs have not indicated where Defendant is incorporated or where it conducts its principal place of business. Needless to say, Plaintiffs' documents would raise a question regarding whether Defendant is operating independently from Defendant Deja Vu Inc. and whether Defendant may simply be a shell corporation, actually controlled by Defendant Deja Vu, Inc., if Plaintiffs had submitted any evidence regarding the corporate structure of Defendant and its capitalization. This evidence is lacking; there is simply no competent evidence that would suggest that Defendant does not function independently of another Defendant. In addition, Plaintiffs have submitted no evidence that Defendant has had any contacts with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 45: Ypsilanti Art Theatre Corp.*

Plaintiffs assert that jurisdiction is proper over this Michigan Defendant corporation based on 1990 and 1992 consulting agreements entered into with Defendant Deja Vu, Inc. The agreements provide for the payment by Defendant of substantial sums on a weekly basis in exchange for Defendant Deja Vu, Inc.'s services. (Doc. # 673, Exs.# 101–# 102). Plaintiffs also point to a 1994 lease agreement in which Defendant Deja Vu, Inc. leased a car to Defendant for joint use by

their employees and agents. (Doc. # 673, Ex. # 103).

For the same reasons discussed in regards to the previous Defendant, Plaintiffs have not established that Defendant is Defendant Deja Vu, Inc.'s or another Defendant's alter ego. In addition, Plaintiffs have failed to offer any evidence establishing contact by Defendant with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 46: North Crest Art Theatre, Inc.*

Plaintiffs assert that jurisdiction is proper over this Michigan Defendant corporation based on the fact that Defendant Deja Vu, Inc. leases property to Defendant who in turn apparently sublets the property to an Ohio Deja Vu Club. (Doc. # 673, Ex. # 105). Plaintiffs also state that Defendant Harry Mohney owns all of the shares in Defendant corporation. (Doc. # 673, Ex. # 21 at 279:2–6).

Plaintiffs have not made a showing sufficient to exercise personal jurisdiction over Defendant. Defendant Harry Mohney stated in his deposition that he owned all of the shares of Defendant corporation *at one time,* not currently as incorrectly suggested by Plaintiffs' counsel to the Court. Even if Defendant Mohney owned a substantial number of shares in Defendant corporation at this time, there has been a patently insubstantial showing that Defendant is a mere shell run by Defendant Harry Mohney or Defendant Deja Vu, Inc. In addition, Plaintiffs have failed to provide any evidence of personal contacts that Defendant may have had with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 47: Deja Vu Showgirls of Las Vegas, Inc.*

Plaintiffs assert jurisdiction is proper over this Nevada corporation because (1) Defendant Eyefull, Inc. paid rent on the property where the club is located (Doc. # 673 at 36, Ex. # 109) (stating that "[c]orrespondence with the apparent landlord indicates that the rent is being paid by Eyefull, Inc.")); (2) Defendant Krontz may somehow be involved with managing the Club (Doc. # 673 at 36 (stating that "[t]he 'contact name' provided for the corporation is Donald Krontz"); and

(3) Defendant Deja Vu Consulting, Inc. "invoiced" Defendant for certain travel and advertising costs in 1995 (Doc. # 673, Ex. # 110).

Plaintiffs' evidence is mere speculation. It does not appear certain to the Court that Defendant Eyefull, Inc. paid the rent on the property where Defendant is located; the check does not so indicate. (Doc. # 673, Ex. # 109). Moreover, Defendant Krontz's and Defendant Deja Vu Consulting Inc.'s relationship with Defendant has not been established with any exhibits—counsel's statements in his affidavit are not based on personal knowledge and have not been considered by the Court. Clearly, Plaintiffs' evidence is not sufficient to pierce Defendant's corporate veil. In addition, there is absolutely no evidence that Defendant has had any contact with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 48: Deja Vu Showgirls of Las Vegas, L.L.C.*

 Plaintiffs assert that jurisdiction is proper because: (1) Defendants Eyefull, Inc. and Pastime Coin Machine, Inc. formed Defendant (Doc. # 673, Ex. # 113); and (2) Defendant executed a consulting agreement with Defendant Deja Vu Consulting, Inc., under which Defendant pays Defendant Deja Vu Consulting, Inc. a weekly consulting fee of $5,000 (Doc. # 673, Ex. # 114).

Plaintiffs have not established that Defendant is the alter ego of Defendant Deja Vu Consulting Inc. or another Defendant. The mere fact that Defendant was formed by two of the other Defendants in this action does not make the corporation a sham. The Court also notes that the consulting agreement with Defendant Deja Vu Consulting gives Defendant the authority to fix all policies related to the club's operation. (Doc. # 673, Ex. # 114). In addition, Plaintiffs have come forward with no evidence establishing minimum contacts with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

*Defendant 49: Deja Vu Entertainment–Toledo*

Defendant apparently does business in Ohio, although it is a Nevada corporation

with an office in Michigan. (Doc. # 673, Ex. # 116). Plaintiffs maintain that jurisdiction is proper over this Defendant as an alter ego of Defendant Deja Vu, Inc. (Doc. # 673 at 37–38). Plaintiffs have submitted evidence that (1) from 1993 to 1995, Defendant and Defendant Deja Vu, Inc. have been referred to in Ohio corporate documents as one and the same entity (Doc. # 673, Ex. # 116); (2) Defendant entered into consulting agreements with Defendant Deja Vu, Inc. from 1990 until 1993, under which Defendant paid Defendant Deja Vu, Inc., a weekly consulting fee (Doc. # 673, Exs.# 117, # 119–120); and (3) Defendant entered into an advertising contract with Defendant Imagination, Corp. (Doc. # 673, Ex. # 118).

Plaintiffs have failed to provide sufficient evidence indicating that Defendant's corporate veil should be pierced. For example, there is no evidence regarding the corporate structure of Defendant or Defendant's capitalization. Although there is some exhibits indicating that Defendant may do business as Deja Vu Inc. in Ohio (Doc. # 673, Ex. # 116), the context surrounding the documents has not been provided, and the consulting agreements—last executed in 1993—contradict these exhibits. Moreover, there has been no showing made that fraud or injustice would result if corporate formalities were not preserved. In addition, Plaintiffs have failed to show that Defendant has had any contacts with Washington State.

### Defendant 50: Deja Vu–Nashville, Inc.

Plaintiffs assert that jurisdiction is proper over this Tennessee Defendant corporation because it is an alter ego of Defendant Deja Vu, Inc. Plaintiffs point to a 1992 special meeting of the shareholders at which Defendant Donald Krontz, the sole shareholder, removed the then director of Defendant corporation. (Doc. # 673, Ex. # 121). Plaintiffs also evidence certain loans made by Defendant Deja Vu, Inc. to Defendant and also a transfer in Defendant's stock from Defendant Deja Vu, Inc. to Defendant Dynamic Industries, Ltd. in 1994. (Doc. # 673 at 38–39).

Plaintiffs have failed to establish that Defendant is a sham, a mere shell for Defendant Deja Vu, Inc. or Defendant Dynamic Industries Ltd. Plaintiffs have offered no evidence of inadequate capitalization or deficien-cies in the corporate structure. The mere fact that Defendant Deja Vu, Inc. loaned money to Defendant or transferred stock to a third party does not indicate that Defendant Deja Vu, Inc. controlled Defendant. In addition, Plaintiffs have provided no evidence that Defendant has had any contacts with Washington State.

### Defendant 51: Concentric Limited

Plaintiffs assert that jurisdiction is proper over this out-of-state Defendant because (1) Defendant allegedly owns property in Colorado—the Court notes that Plaintiffs have cited to no exhibits indicating conclusively that Defendant owns property in Colorado; exhibit # 125 only indicates that Defendant insured certain property in Colorado; (2) in 1992, Defendant received a wire transfer from Defendant Michigan Reef Development Corp. (Doc. # 673, Ex. # 126); (3) Defendant has loaned money to some of the other Defendants, including Defendant Eyefull, Inc. (Ex. # 127); and (4) Defendant Harry Mohney has signed checks on behalf of Defendant (Doc. # 673, Ex. # 128 (evidencing endorsement on behalf of Jolar Cinema, a California Club))

Plaintiffs' evidence does not provide sufficient grounds for piercing the corporate veil of Defendant. There is no evidence of Defendant's corporate structure or capitalization. Loans between and among Defendants do not establish a conspiracy. Moreover, even if the Court were to pierce Defendant's corporate veil, the Court has no idea who is supposedly the alter ego of Defendant corporation. In addition, Plaintiffs have offered no evidence that Defendant has had any contacts with Washington State. Accordingly, Defendant should be dismissed due to lack of personal jurisdiction.

## IV. CONCLUSION

In light of the foregoing, the Court recommends that out-of-state Defendants' motion for summary judgment on the lack of personal jurisdiction be DENIED as to Defendants Deja Vu, Inc. and Deja Vu Consulting, Inc. and that the motion be GRANTED as to all remaining Defendants. Plaintiffs have presented a prima facie case of jurisdiction over Defendants Deja Vu, Inc. and Deja Vu, Con-

sulting, Inc. At a later evidentiary hearing or at trial, Plaintiffs will be required to prove the existence of personal jurisdiction over these Defendants by a preponderance of the evidence. A proposed order accompanies this Report and Recommendation.