**FLYNT DISTRIBUTING COMPANY, INC., Plaintiff-Appellee,**

v.

**Leon HARVEY, Alfred Harvey, et al., Defendants-Appellants.**

**No. 83–5941.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1984.

Decided June 12, 1984.

Henry D. Fetter, Thomas Doniger, Stanton, Oberstein & Doniger, Los Angeles, Cal., for defendants-appellants.

Richard N. Rust, Richard Agay, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for plaintiff-appellee.

Before GOODWIN, SNEED and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Leon Harvey, Alfred Harvey, et al. (the Harveys) appeal from the grant of a preliminary injunction in an action brought by Flynt Distributing Company, Inc. (Flynt) for breach of a written distribution agreement, open book account, money had and received, account stated, and an injunction. The complaint alleges that the Harveys, by failing to ship their publications for distribution and by refusing to pay for services rendered, breached the agreement in August 1982. Flynt seeks money damages in the amount of $293,656.99 plus interest and lost profits.

In support of the claim for an injunction, Flynt alleged that the Harveys were "planning to dispose of their assets and the stock in the Defendant corporations in a manner by which they would attempt to have the transferee avoid responsibility for their obligations under the Agreement." It also alleged in the complaint that Flynt would be irreparably damaged by such transfer because "the assets received in such transfer would be secreted in a manner that would make them unavailable for levy of execution." The original complaint was filed on April 18, 1983, and the first amended complaint was filed on April 27, 1983.

On May 5, 1983, Flynt filed a motion for a preliminary injunction. The Harveys filed an opposition to the granting of a preliminary injunction and a motion for dismissal for want of personal jurisdiction. On May 23, 1983, the court ordered that a preliminary injunction should issue and denied the motion for dismissal based on the affidavits submitted by both sides and oral argument by counsel. All eighteen Harvey defendants were enjoined from transferring their assets without including as an express condition of the transfer that the distribution agreement be binding on the transferee.

Notice of appeal was filed on June 2, 1983.[1]

## I

The Harveys raise three issues on appeal.

One. The district court lacked in personam jurisdiction over the five defendants who were parties to the distribution agreement because of "insufficient minimum contact[s]."

Two. The district court had no jurisdiction over the thirteen defendants who did not sign the agreement.

Three. The district court erred in issuing an injunction because Flynt seeks money damages arising out of an alleged breach of contract.

We have concluded that the court had jurisdiction over each defendant but erred in granting a preliminary injunction because the facts demonstrated that the remedy at law was adequate.

We discuss each contention and the facts pertinent thereto under separate headings.

## II

A. *Jurisdiction Over the Signatories to the Distribution Agreement.*

The Harveys are New York corporations, New York partnerships and individual residents of New York. Five of the Harvey corporations—Harvey Hits, Inc., Harvey Illustrated Humor, Inc., Harvey Picture Magazines, Inc., Harvey Publications, Inc., and Sad Sack, Inc., (the five signatories)—had an agreement with Publishers Distributing Corporation (PDC) for the nationwide distribution of their magazines. In March 1980, Flynt, a California corporation, acquired PDC and thereby became the nationwide distributor for the five signatories. On December 9, 1981, Flynt and the five signatories executed an amendment to the distribution agreement. The amendment

provided that the distribution agreement would terminate on October 31, 1982.

All of the named Harvey defendants are nonresidents of California, whose only contact with the forum state arises out of the distribution agreement. The Harveys argue that the distribution agreement is an insufficient minimum contact to support the exercise of jurisdiction over them.

Whether there is a basis for the exercise of personal jurisdiction in a diversity of citizenship case depends upon two inquiries: (1) whether a state statute of the forum confers personal jurisdiction over the nonresident defendant and (2) whether the exercise of jurisdiction accords with federal constitutional principles of due process. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1286 (9th Cir.1977). Section 410.10 of the California Code of Civil Procedure permits the exercise of jurisdiction to the extent authorized by the Constitution of the United States. Thus, the state and federal limits are coextensive. *Data Disc,* 557 F.2d at 1286 & n. 3. The basic federal rule is that the defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Data Disc,* 557 F.2d at 1287.

The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists. *Data Disc,* 557 F.2d at 1285. Where, as here, the trial court determines that it will receive only affidavits, the plaintiff need make only a prima facie showing of jurisdictional facts. *Id.* If there is a dispute about the jurisdictional facts, the plaintiff will have to establish them by a preponderance of the evidence at a preliminary hearing or at trial. *Id.*

---

1. After the filing of this appeal, the district court granted a modification to the preliminary injunction. Flynt moved to dismiss the appeal as moot in light of the modified order. Flynt's motion was denied on February 16, 1984. The district court had no jurisdiction to "modify and

supersede" its order after the filing of the notice of appeal. *See State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 758–59 (2d Cir.1977); *Matter of Combined Metals Reduction Co.,* 557 F.2d 179, 200–01 (9th Cir.1977).

In determining whether the Harveys' activities that are related to Flynt's cause of action are of such a nature and quality that they support the exercise of jurisdiction, we use the following approach:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Data Disc*, 557 F.2d at 1287.

■■■■ The five signatories originally entered into the distribution agreement with another New York corporation, PDC. After Flynt acquired PDC, the five signatories extended the expiration date of the original distribution agreement in an amendment negotiated with Flynt. Although the five signatories to the December 9, 1981, amendment to the distribution agreement negotiated and signed the amendment in New York, they knew that they were negotiating with a California corporation. They intended that their magazines be distributed nationwide, and a portion of those were distributed in California. By entering into a distribution agreement with a California corporation for the distribution of their magazines in California and elsewhere, the five signatories purposefully availed themselves of that forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (if sale of a product arises from efforts of manufacturer or distributor to serve the market in other states, it is reasonable to subject the manufacturer to suit in one of those states); *Taubler v. Giraud*, 655 F.2d 991, 994–95 (9th Cir. 1981) (breach of contract and antitrust claims against French winemaker). The breach of the distribution agreement alleged by Flynt, consisting of a failure to pay Flynt and to ship magazines to California and elsewhere, caused injury to Flynt in California. The district court could proper-

ly conclude that jurisdiction over the five signatories is reasonable. Due process does not require substantial contacts or the selection of the best forum; it requires only minimum contacts and fair play. *Taubler*, 655 F.2d at 996.

The five signatories purposefully availed themselves of the privilege of conducting activities in California when they entered into the distribution agreement with Flynt and may be sued in California on causes of action related to that agreement.

B. *Jurisdiction Over the Thirteen Non-Signatories.*

Thirteen of the Harvey defendants did not sign the agreement to ship magazines to California. Nevertheless, the district court correctly concluded that, if Leon and Alfred Harvey were the alter egos of the five signatories and of the other Harvey corporations and partnerships, jurisdiction could be asserted over them all. "[W]here a corporation is the *alter ego* of the stockholders so as to justify disregard of the corporate entity[,] jurisdiction over the corporation will support jurisdiction over the stockholders." *Sheard v. Superior Court*, 40 Cal.App.3d 207, 210, 114 Cal.Rptr. 743 (1974).

■■■■ To apply the alter ego doctrine, the court must determine (1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice. *Watson v. Commonwealth Insurance Co.*, 8 Cal.2d 61, 68, 63 P.2d 295, 298 (1936). The district court required only a prima facie showing of jurisdiction. Under *Data Disc*, Flynt was only required to make a prima facie showing of the alter ego relationship. Flynt's affidavits showed that Leon and Alfred Harvey, the sole shareholders of the corporations and the sole partners of the partnerships, converted the assets of the various corporations and partnerships for their own use and dealt with them as if they were one. These affidavits also con-

tained allegations that the Harveys transferred valuable assets from the five signatory corporations to the other nonsignatories. This activity left the five signatories undercapitalized. Such conduct constitutes a prima facie showing that it would be unjust to shield the Harveys behind the corporate veil.

■ The Harveys argue that Flynt's evidence is hearsay. The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial. 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil,* § 2949 at 471 (1973). *See Ross-Whitney Corp. v. Smith Kline & French Laboratories,* 207 F.2d 190, 198 (9th Cir.1953) (preliminary injunction may be granted on affidavits).

■ The district court properly concluded that Flynt made a prima facie showing of jurisdiction over the Harvey defendants. If upon remand this issue is still in dispute, Flynt must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial at the court's discretion.

## III

At the time of the filing of this action, the Harveys were negotiating the sale of their assets to Cadence Industries Corporation (Cadence). The distribution agreement between Flynt and the five signatories required that any transfer of the Harveys' assets contain an express condition that the distribution agreement be binding upon the transferee.[2] The district court's injunction was based upon the language of that agreement.

■ The grant of a preliminary injunction will be reversed only if the lower court abused its discretion or based its decision on an erroneous legal standard or clearly erroneous findings of fact. *Wilson v. Watt,* 703 F.2d 395, 398 (9th Cir.1983).

■ In the instant matter, the court orally announced at the conclusion of the May 23, 1983, hearing that it was granting the preliminary injunction based on the December 9, 1981, amendment to the distribution agreement concerning the transfer of assets, and the fact that the proposed sale violated the New York Bulk Sales Law. The court stated the basis for its order in the following language:

Now, the basis of the injunction, the reasons for the granting of the injunction are the two grounds which we have heretofore described. They are alternate grounds. On the basis of those I am making a—or I am reaching a conclusion that the contract gave the plaintiff the right to security for payment and that that contract right of the plaintiff would be rendered nugatory as a result of a transfer of the assets without some assumption by the transferee of the obligation.

I also find, I think looking at the whole record, based on all the papers that I have before me, that there is a probability of success. When you put that together with the irreparable harm that could occur, there is a substantial reason for the granting of the injunction.

It should be noted that the court did not expressly find that money damages would be an inadequate remedy. "The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies." *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1202 (9th Cir.1980).

---

**2.** Provision 4 of the December 9, 1981, amendment to the distribution agreement states:

Publisher warrants and represents that, as an express condition to any transfer, sale, assignment, or encumbrance of all or substantially all of Publisher's assets or any transfer, sale,

assignment, or encumbrance of a majority or controlling interest in Publisher, the Distribution Agreement and any and all Addendums thereto shall remain in full force and effect, and shall be binding upon such party or parties.

Although stated in varying ways, Flynt's cause of action is based on a claim that the Harveys breached the distribution agreement as amended by failing to pay $293,656.99, which is owing "for services already performed pursuant to the Agreement." In addition, Flynt prayed for damages equal to the "profit it would have made by continuing to distribute Defendants publications." Although the parties do not agree that a breach of contract occurred, no contention has been made that the total amount of damages would not be capable of computation. "[M]onetary injury is not normally considered irreparable." *Los Angeles Memorial Coliseum*, 634 F.2d at 1202.

Flynt argues that the remedy at law is not adequate because the evidence presented to the district court demonstrates that the Harveys threaten "an imminent transfer and dissipation of [their] only remaining assets ... which would tend to render any eventual money judgment ineffectual." Appellee's brief, page 18. We are also told that evidence presented to the court would support the finding that "if the sale to Cadence were permitted to go forward without injunctive relief, defendants did not intend to use the proceeds from the sale to satisfy the debt to plaintiff, but rather intended to use said proceeds *exclusively* for the personal expenses of defendants Leon Harvey and Alfred Harvey for payment of claims of creditors other than plaintiff." Appellee's brief, page 15 (emphasis added). Flynt refers us to the fol-

lowing language from the affidavit of Leon Harvey's wife, Justine, in support of the foregoing "finding"[3]:

> I have been advised by my attorneys that there is a strong likelihood that the litigation among the Harveys can be settled once the sale to Cadence is completed. They have already reached a tentative settlement agreement. The proceeds of the sale to Cadence Industries will be used to settle the claims among the Harveys and provide a sum of money so that my husband, Leon Harvey and his twin brother, Alfred Harvey, will have money to take care of themselves in their sickness and old age.

This reference to the record is misleading and disinguous. Flynt failed to bring to our attention the fact that the same affidavit also contains the following language:

> Cadence has promised to defend and indemnify the Harveys with respect to the Flynt claim. Flynt will not be prejudiced by the sale to Cadence since Cadence has agreed to defend and indemnify the Harveys after the sale.

The Harveys also presented the following uncontroverted evidence to the district court:

> [Under] the terms of the proposed sale ... Cadence has agreed to assume almost $1,000,000 of the debts of the seller including that certain obligation to Flynt Distributing Company, Inc. and has

---

**3.** The district court, relying at least in part on findings prepared by Flynt, filed findings of fact and conclusions of law on July 6, 1983, more than three weeks after the Harveys' opening brief was filed in this court. The notice of appeal had been filed on June 2, 1983.

The Harveys' opening brief was served on counsel for Flynt on June 3, 1983. Flynt's brief was filed on February 1, 1984. That brief contains the astonishing argument that "defendants have completely failed to make any reference in their brief to the written Findings of Fact and Conclusions of Law which were made in connection with the issuance of the preliminary injunction." Appellee's Brief, page 4. Obviously, an appellant cannot refer to written findings filed after his brief is served on opposing coun-

sel. Counsel for the Harveys accuses counsel for Flynt of carefully tailoring his proposed findings to cure any deficiencies disclosed by the opening brief. At oral argument, Flynt's attorney denied this accusation. We cannot resolve this unfortunate controversy. We note, however, that the circumstances under which these findings were prepared for the court detract from the appearance of justice.

In any event, it is doubtful that the district court had jurisdiction to issue written findings of fact and conclusions of law after the filing of the notice of appeal. *See Barber v. United States*, 711 F.2d 128, 130 (9th Cir.1983) (a district court lacks jurisdiction to amend findings of fact after filing of a notice of appeal).

agreed to indemnify the Harveys against collection of such claim.[4]

It is clear to us that the proposed sale to Cadence would have provided adequate protection to Flynt for any money damages it may obtain as a result of the alleged breach of contract. Accordingly, it was error to issue an injunction on the basis of the facts presented to the district court.

We are not persuaded that the issuance of the injunction was proper because the amended distribution agreement gave Flynt "greater rights than defendants' other creditors." This argument completely ignores the fact that that agreement expired on October 31, 1982, *prior* to the request for injunctive relief. The granting of injunctive relief, under these circumstances, unjustifiably would give Flynt a preference over all other creditors and circumvent the requirements and protections of the Bankruptcy Act. Because we have concluded that money damages provide an adequate remedy under the facts of this case, we also reject Flynt's contention that a threatened violation of New York's Bulk Sales Law justifies injunctive relief. *See T.W. Oil, Inc. v. Consolidated Edison Co.*, 57 N.Y.2d 574, 443 N.E.2d 932, 935 n. 4, 457 N.Y.S.2d 458, 461 n. 4 (1982) (when preliminary injunction denied on adequate remedy ground, plaintiff pursued breach of contract remedy); *Fair Sky, Inc. v. International Cable Ride Corp.*, 23 A.D.2d 633, 257 N.Y.S.2d 351, 353, (1965) (Injunctive relief is not proper where the remedy at law to recover damages is an adequate remedy).

### IV

Flynt has made a prima facie showing of in personam jurisdiction over all the Harvey defendants. The order issuing the preliminary injunction is REVERSED.

4. The sale agreement then being negotiated between Cadence (the Purchaser) and the Harveys (the Sellers) contained the following provision regarding Flynt's claim:

Purchaser agrees to indemnify and hold Sellers harmless only from and against the claims (including any expenses, costs and attorney's fees incident to the defense of such claims) of

Flynt Distributing Company, World Color Press, Inc. and Chemical Color Plate Corporation, but only to the extent of and not to exceed $280,000, $640,000 and $40,000, respectively, *unless* Purchaser undertakes to defend against such claims, in which event Sellers shall be indemnified for the entire amount of such claims, without limitation.