**David RESNICK, Plaintiff,**

v.

**Mike ROWE; Bruce Friedman; and Lenders Depot of Sherman Oaks, Inc., Defendants.**

**Civil No. 03–00168 SOM–KSC.**

United States District Court, D. Hawai'i.

Sept. 8, 2003.

---

**18.** RT 1102:16–1111:20.

**19.** RT 1324:13–15.

**20.** RT 1112:13–1118:2.

Jerry H. Stein, Levin & Stein, Los Angeles, CA, Ken T. Kuniyuki, Honolulu, HI, for plaintiff.

Wilma Sur, Dane L. Miller, Miller, Tokuyama, Kralik & Sur, Honolulu, HI, Gary Phillips, Astor & Phillips, Los Angeles, CA, for defendants.

*ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND ALTERNATIVE MOTION TO TRANSFER VENUE*

MOLLWAY, District Judge.

## I. INTRODUCTION.

This is a diversity case arising out of the failed sale of a golf course and other prop-

erty. Plaintiff David Resnick of Oregon alleges that Defendants Mike Rowe, Bruce Friedman, and Lenders Depot of Sherman Oaks, Inc. (collectively, "Defendants"), breached an agreement to purchase that property (Count I), intentionally misrepresented and concealed facts (Count II), made negligent misrepresentations (Count III), and breached the covenant of good faith and fair dealing (Count IV). Defendants, all from California, have moved to dismiss Resnick's Complaint for lack of personal jurisdiction. Alternatively, Defendants request a transfer of venue.

Because Resnick has met his burden on this motion of demonstrating that this court has specific jurisdiction over each Defendant as to each claim, and because the convenience of witnesses and parties and the interests of justice do not require venue to be transferred, the court denies the motion.[1]

## II. STANDARD OF REVIEW FOR MOTION TO DISMISS BASED ON AN ALLEGED LACK OF PERSONAL JURISDICTION.

A plaintiff has the burden of establishing personal jurisdiction over a nonresident defendant. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir.1984). Even when defendants are jointly liable, a plaintiff must establish personal jurisdiction over each defendant individually: *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). Moreover, a plaintiff must establish personal jurisdiction over a defendant with respect to each claim. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n. 8 (9th Cir.1977).[2]

When, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ziegler*, 64 F.3d at 473; *Flynt*, 734 F.2d at 1392. If the plaintiff makes such a prima facie showing on the motion to dismiss, the plaintiff must eventually establish the jurisdictional facts by a preponderance of the evidence at either a preliminary hearing or a trial. *Flynt*, 734 F.2d at 1392.

In determining whether a plaintiff has made a prima facie showing of jurisdictional facts, the court must accept uncontroverted allegations in a complaint as true, even if unsupported by any evidence in the record before the court. *See AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996), *as supplemented by* 1996 WL 490789 (9th Cir. Aug. 28, 1996). If the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and declarations. *See id.* Conflicts between the parties' affidavits and other discovery materials must be resolved in favor of the plaintiff for purposes of deciding whether a prima facie case for personal jurisdiction exists. *In re Pintlar Corp.*, 133 F.3d 1141, 1144 (9th Cir.), *cert. denied*, 524 U.S. 933 (1998).

---

**1.** The court commends counsel on both sides for their oral argument. The responses by attorneys on both sides to the prehearing inclination issued by the court were models of what the court hopes to receive at hearings.

**2.** However, if the court determines that there has been a sufficient showing of personal jurisdiction to reach trial with regard to one claim, but not another, it may or may not be appropriate to assume jurisdiction over the other claim under principles analogous to the doctrine of pendent jurisdiction. *See Data Disc.*, 557 F.2d at 1289 n. 8.

## III. *BACKGROUND FACTS.*

It is undisputed that Resnick is a citizen of Oregon and that Defendants are all citizens of California. It is also undisputed that most of the events underlying this action occurred outside of Hawaii. Unless specifically noted below, the events described occurred in either Oregon or California.

Pursuant to an agreement made on January 9, 2003, Resnick had the right to purchase the Kiahuna Golf Course on Kauai, Hawaii, and several other properties (collectively, the "Golf Course Properties") for $9,850,000. *See* Declaration of David Resnick (August 6, 2003) ¶ 5. According to the terms of this agreement, Resnick was required to close escrow on these properties by April 9, 2003. *Id.*

Before executing the agreement of January 9, 2003, Resnick was already exploring the possibility of reselling the Golf Course Properties for a quick profit. *Id.* ¶ 6. Resnick says he found purchasers for the Golf Course Properties willing to buy all but one of the properties for $13.6 million. *Id.* ¶ 9. Resnick would have then had possession of the remaining property, valued at $3 million. *Id.* Resnick says that at least some of these purchasers were Hawaii residents. *Id.* ¶¶ 7–8.

According to Resnick, while negotiating the sale of the Golf Course Properties to these purchasers (the "Hawaii Purchasers"), he was also discussing the possibility of selling the Golf Course Properties to a joint venture consisting of Resnick, Rowe, and Friedman, or of selling the properties to Rowe and Friedman outright. *Id.* ¶¶ 10–12.

Resnick claims that he exchanged emails with Rowe and that Rowe ultimately told Resnick that Rowe was going to Kauai to see the Golf Course Properties. *Id.* ¶ 13. Rowe and Resnick allegedly met on Kauai on January 13, 2003. *Id.* Rowe says in his declaration that he was acting in his individual capacity. *See* Declaration of Mike Rowe (May 30, 2003) ¶ 1. The Complaint alleges, however, that Rowe was acting as an agent for Friedman and Lenders Depot, a company allegedly controlled by Friedman. *See* Complaint ¶¶ 10–14. The court notes that Rowe's statement was a disavowal of any action on behalf of his employer, Sienna Corporation, and was not directed at the allegation that he was an agent for Friedman or Lenders Depot. Rowe's statement therefore does not dispute the agency allegation in the Complaint.

Resnick says that, at the meeting in Hawaii on January 13, 2003, he told Rowe that, in light of Resnick's closing date of April 9, 2003, Rowe needed to decide quickly whether Rowe was interested in purchasing the Golf Course Properties. Resnick Decl. ¶ 13. Resnick says he also told Rowe that Resnick needed to know whether Rowe had the money to close escrow. *Id.* ¶ 15. Rowe allegedly responded by informing Resnick that Friedman was financially strong and could purchase the properties immediately. *Id.*

Rowe, according to Resnick, conducted due diligence in Hawaii on the Golf Course Properties on January 14 and 15, 2003. *Id.* ¶ 16.

On January 16, 2003, Rowe allegedly told Resnick by phone that he was prepared to pay $16 million for the Golf Course Properties. Resnick says he accepted the offer on the condition that the sale be structured as a joint venture. *Id.* ¶ 17.

Resnick says that, on January 22, 2003, he asked Rowe for Friedman's phone number. Resnick then allegedly called Friedman, who assured Resnick "that, through a company that he controlled, Lenders Depot, he had immediate access

to and control of available funds sufficient to purchase the Kiahuna Golf Course Properties." *Id.* ¶ 19.

On February 7, 2003, after negotiations for a complete buyout at $17 million, Rowe and Resnick signed an agreement for the outright sale of the Golf Course Properties. *Id.* ¶ 26–27.

According to the February 7, 2003, agreement, Rowe was required to "deposit $17,160,000 in escrow with First American Title Company (such funds to be held in an account with a bank selected by Rowe) with escrow instructions mutually acceptable to Rowe and Resnick." *See* February 7, 2003, agreement (attached as Ex. 7 to Resnick Decl.). Resnick says that the money was to be wired to the Honolulu branch of First American Title. *See* Resnick Decl. ¶¶ first 29, 31.

Resnick claims that, when the escrow company in Honolulu did not timely receive the wired funds, Resnick contacted Rowe about the funds. Rowe allegedly informed Resnick that he did not know the status of the wire transfer because Friedman was the one who knew about the wire transfer and Friedman had called in sick. *Id.* ¶¶ second 29–30.

On February 12, 2003, Rowe allegedly informed Resnick that Friedman had told Rowe that the money had been wired to the Honolulu escrow officer, Marlene Texiera. *Id.* ¶ 31.

Resnick says that, on February 13, 2002, both Rowe and Friedman again assured Resnick that the funds had been wired to the Honolulu escrow officer. *Id.* ¶ 32.

On February 14, 2003, Rowe allegedly told the escrow officer in Honolulu "what he represented were the federal tracking numbers that he had received from Friedman" so that she could try to trace the funds. *Id.* ¶ 35. The escrow officer alleg-

edly determined that the tracking numbers were not genuine. *Id.*

On or about February 18, 2003, the escrow officer in Honolulu allegedly received from Friedman a different set of tracking numbers, which also turned out to be false. *Id.* ¶ 37. Later that day, in a call involving Resnick, Rowe, and Friedman, Friedman allegedly said that the funds to purchase the Golf Course Properties were coming from an investor group in New York. *Id.*

Resnick claims that, on February 20, 2003, Friedman called Resnick to inform Resnick that the investor(s) had backed out, that there was no money, and that the deal was off. *Id.* ¶ 43.

On March 2, 2003, while Resnick was in Hawaii, Rowe allegedly called Resnick to say that he was still trying to find funds for the property. *Id.* ¶ 45. The next day, Rowe allegedly emailed Resnick in Hawaii to say that efforts to secure financing were continuing.

Resnick alleges that, because of Defendants' actions, he was unable to close the sale with the Hawaii Purchasers for $13.6 million—the price that they were originally willing to pay for all but one of the Golf Course Properties. Instead, he was able to sell those properties for only $10.26 million. *Id.* ¶ 46.

## IV. *ANALYSIS OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.*

The district court must consider two factors before exercising personal jurisdiction over a nonresident defendant in a diversity of citizenship case: "(1) whether an applicable state rule or statute potentially confers jurisdiction over the defendant; and (2) whether assertion of such jurisdiction accords with constitutional principles of due process." *Flynt,* 734 F.2d at 1392; *Miracle v. N.Y.P. Holdings,*

*Inc.*, 87 F.Supp.2d 1060, 1064 (D.Haw. 2000). The "jurisdictional inquiries under state law and federal due process merge into one analysis" when, as here, the state's long-arm statute is "co-extensive with federal due process requirements." *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir.1991); *Cowan v. First Ins. Co. of Haw.*, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980) (Hawaii's long-arm statute, Haw. Rev.Stat. § 634–35, was adopted to expand the jurisdiction of Hawaii's courts to the extent permitted by the due process clause of the Fourteenth Amendment). Accordingly, personal jurisdiction over Defendants depends on federal due process requirements.

The Due Process Clause of the United States Constitution protects a person's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Due Process Clause requires that defendants have "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154; *Data Disc*, 557 F.2d at 1287. To have had the required minimum contacts, Defendants must have purposefully availed themselves of the privilege of conducting activities within Hawaii, thereby invoking the benefits and protections of Hawaii's laws. *See Asahi Metal Indus. Co. v. Sup. Court of Cal.*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In other words, Defendants' conduct and connection with Hawaii must have been such that they "should reasonably anticipate being haled into court" in Hawaii. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990) (quoting

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Requiring "minimum contacts" performs two functions. "It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States[,] through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 580.

█ In applying the requirements of the Due Process Clause, courts have created two jurisdictional concepts—general and specific jurisdiction. A court may exercise general jurisdiction over a defendant when the defendant is a resident or domiciliary of the forum state, or the defendant's contacts with the forum state are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Data Disc*, 557 F.2d at 1287 ("If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities."). Resnick is not asserting that Defendants' contacts with Hawaii were sufficient to confer general jurisdiction over them. Opposition at 13 ("Resnick does not contend that this Court has general jurisdiction over Defendants. Rather, only specific jurisdiction is at issue in this action.").

█ Specific jurisdiction, on the other hand, may be found when the cause of action arises out of a defendant's contact with or activities in the forum state. *See Roth*, 942 F.2d at 620; *Data Disc*, 557 F.2d at 1287. To ensure that the exercise

of specific jurisdiction is consistent with due process, this court must be satisfied that the following have been shown:

> 1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable.

*Roth*, 942 F.2d at 620–21.

### A. *Purposeful Availment.*

The purposeful availment requirement protects a defendant from being haled into a jurisdiction merely because of random, fortuitous, or attenuated contacts with the jurisdiction, or because of the unilateral activity of a third person. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Jurisdiction is proper when "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

■ In examining the purposeful availment requirement, this court analyzes "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Roth*, 942 F.2d at 621; *see also Gray & Co. v. Firstenberg Mach., Co.*, 913 F.2d 758, 760 (9th Cir.1990). However, the defendant need not have been physically present or have had physical contact with the forum state, so long as the defendant's efforts were "purposefully directed" toward a forum resident. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Ballard v. Savage*, 65 F.3d

1495, 1498 (9th Cir.1995)). In examining the purposeful availment requirement, the Ninth Circuit distinguishes between tort and contract actions. *See Roth*, 942 F.2d at 621.

### 1. *Tort Claims.*

In the tort context, "the Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state." [3] *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir.1986).

■ With respect to the tort claims against Rowe, Resnick satisfies the purposeful availment prong. At a minimum, Resnick claims that Rowe traveled to and negotiated with Resnick in Hawaii, where Rowe allegedly misrepresented that he and Friedman had the financial ability to purchase the property. Resnick alleges that this was a tortious misrepresentation and that it, combined with other similar misrepresentations made in either California or Oregon, as well as misrepresentations made to the Hawaii escrow officer, caused him not to sell the Golf Course Properties to the Hawaii Purchasers immediately. Notwithstanding Defendants' contention that the only effect of the alleged torts occurred in Oregon, the alleged failed sales to the Hawaii Purchasers, assuming the facts alleged by Resnick are true, would be an "effect" in Hawaii arising from alleged "foreign acts." Resnick's allegations therefore satisfy the purposeful availment requirement.

In arguing that Resnick does not satisfy the effects test, Rowe relies on *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223

---

**3.** In Defendants' reply, Defendants argue, without citation, that the "foreign act, forum effect" test is inapplicable because there is no forum resident in this case. At the hearing, Defendants conceded that they had no authority directly supporting this proposition.

F.3d 1082 (9th Cir.2000). In *Bancroft,* the Ninth Circuit explained that the effects test is satisfied when a defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* at 1087. In light of Resnick's allegations that Rowe committed an intentional tort, Rowe focuses his argument on the second and third prongs.

To find purposeful availment, *Bancroft* requires "something more" than a foreign act with a foreseeable forum effect. Instead, *Bancroft* requires "express aiming" at the forum state. Rowe contends that Resnick cannot demonstrate "express aiming," which Rowe says "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.*

*Bancroft,* however, did not actually require that a plaintiff be a forum resident to satisfy the "express aiming" requirement. *Bancroft* arose in the context of a forum plaintiff, so it never had to address the issue of whether the plaintiff had to be a forum resident. Instead, *Bancroft* merely acknowledged that one way to satisfy the "express aiming" requirement is to have alleged wrongful conduct targeted at a forum resident. This reading of *Bancroft* is consistent with *Keeton v. Hustler Magazine,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), in which the Supreme Court noted that a "plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of de-

fendant's contacts." *Id.* at 780, 104 S.Ct. 1473.[4] *Keeton* held that personal jurisdiction existed even though the plaintiff in that case was not a forum resident. Accordingly, Rowe's out-of-state residency does not, by itself, defeat jurisdiction. Here, Resnick alleges "something more" than a foreign act with a foreseeable forum effect. Resnick asserts that Rowe made misrepresentations to Resnick while both of them were in Hawaii, as well as misrepresentations to the Hawaii escrow officer. These assertions satisfy the "express aiming" requirement.

Rowe next argues that, under Ninth Circuit law, Resnick does not satisfy the foreign act/forum effects test because the "brunt" of the harm, which Rowe characterizes as economic injury suffered in Oregon, was not suffered in the forum state. The court recognizes that, in *Bancroft,* the Ninth Circuit noted that, "to meet the effects test, the defendant must have … caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Bancroft,* 223 F.3d at 1087 (citing *Panavision,* 141 F.3d at 1321). Again, however, this court notes that *Bancroft* involved a case in which the brunt of the harm was indeed indisputably suffered in the forum state. The *Bancroft* court was not faced with applying any test in a situation in which only some, but not most, of the alleged harm had been suffered in the forum state.

Moreover, the issue of whether the "brunt" language in *Bancroft* is truly the law of this circuit has been questioned. *Bancroft* took its "brunt" language from

**4.** The Court notes that, in discussing the "express aiming" prong, *Bancroft* relied on *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), a Supreme Court case decided the same day as *Keeton. Calder* also cited *Keeton* with approval. *Calder,* 465 U.S.

at 788, 104 S.Ct. 1482. Under these circumstances, the Ninth Circuit could not have possibly meant that the only way the "express aiming" prong could be satisfied is if the defendant's wrongful conduct was expressly aimed at a forum resident.

the Ninth Circuit's decision in *Panavision,* which, in turn, took the "brunt" language from *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1486 (9th Cir.1993). Recently, in *Dole Food Co. v. Watts,* 303 F.3d 1104, 1112–13 (9th Cir.2002), the Ninth Circuit has recognized that a majority of the *Core–Vent* panel did not adopt the "brunt" concept. Instead, a single judge, writing for the majority as to the result, expressed the "brunt" requirement. A judge concurring in the result joined the dissenting judge on the issue of purposeful availment. It thus appears that both the dissenting and concurring judges in *Core–Vent* rejected the "brunt" language. The dissenting judge in *Core–Vent* wrote:

> [T]he Supreme Court has already rejected the proposition that the brunt of the harm must be suffered in the forum. *Keeton v. Hustler Magazine,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (*Keeton*) (decided the same day as *Calder*). In *Keeton,* the Court held that limited jurisdiction was proper even though it was "undoubtedly true that the bulk of the harm done to petitioner occurred outside [the forum]." *Id.* at 780, 104 S.Ct. at 1481. In fact, *Keeton* expressly recognized that a plaintiff may sue in any forum with which the defendant has minimum contacts and seek recovery for damages suffered in other forums. *Id.* Reading *Calder* and *Keeton* together, it is clear that Judge O'Scannlain's new test, which requires that a defendant "caus[e] harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state," op. at 1486, is an erroneous statement of the law. No such requirement exists. Indeed, it is inconsistent with the teachings of the Supreme Court.

*Core–Vent,* 11 F.3d at 1492–93 (Wallace, J., dissenting).

Some Ninth Circuit decisions subsequent to *Core–Vent* have cited the "brunt" requirement without noting that a single judge had voiced it in *Core–Vent.* The result is that there is now some confusion within the Ninth Circuit as to the level of harm necessary to satisfy the effects test.[5] *Dole Food,* 303 F.3d at 1113.

If, as *Dole Food* noted, the Ninth Circuit does not require that the brunt of the harm be suffered in the forum state, then, under *Keeton,* Resnick demonstrates Rowe's purposeful availment of the privileges of conducting activities in Hawaii. In *Keeton,* the New York plaintiff was allowed to sue for libel in New Hampshire even though the injury the plaintiff suffered in New Hampshire was minimal. *Keeton* says nothing about any need to show that the brunt of the harm occur in the forum state. The harm described above (the alleged misrepresentations in Hawaii) is significant enough to satisfy the effects test with respect to Rowe.

 With respect to the tort claims against Friedman and Lenders Depot, the court finds that Resnick has also demonstrated purposeful availment. Resnick alleges that Rowe was in a joint venture with or was the agent for Friedman and Lenders Depot. *See* Complaint ¶¶ 10–14. The court recognizes that it could be argued that, even if Rowe, Friedman, and Lenders Depot were joint venturers, satisfaction of the purposeful availment prong with respect to the tort claims against Rowe does not necessarily equate to satisfaction of the purposeful availment prong on the torts claims against Friedman and Lenders Depot. *See Sher,* 911 F.2d 1357 (stating that, "while each partner is gener-

---

**5.** Because sufficient harm was alleged under either standard, *Dole Food* did not decide which test should be applied. *Dole Food,* 303 F.3d at 1113.

ally an agent of the *partnership* for the purpose of its business, he is not ordinarily an agent of his *partners*. Thus, a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners.").[6] However, given Resnick's allegations that Rowe was Friedman and Lenders Depot's agent and that Rowe's representations bound Friedman and Lenders Depot, Resnick satisfies his prima facie burden of demonstrating purposeful availment.[7] *See Sher*, 911 F.2d at 1362 ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal.").

### 2. Contract Claims.

The court turns now from the tort to the contract claims. A contract with an effect in the forum state, by itself, does not automatically establish the minimum contacts necessary for the exercise of personal jurisdiction over a nonresident defendant. *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174. Instead, a court must examine the circumstances surrounding the contract in determining whether there have been the required minimum contacts. Accordingly, this court examines "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479, 105 S.Ct. 2174.

"Parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473, 105 S.Ct. 2174 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)). "Thus, if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir.1986). "Similarly, conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections." *Id.*

Resnick claims that Rowe conducted some of the negotiations for the sale of the Golf Course Properties in Hawaii. Rowe also allegedly conducted due diligence in Hawaii and contemplated purchasing real property in Hawaii. Had he purchased the real property, Hawaii's laws would have been invoked, as Rowe would have had to have to recorded the deeds, paid Hawaii taxes on the sale of the property, and utilized the services of a Hawaii escrow company governed by chapter 449 of the Hawaii Revised Statutes, including send-

---

**6.** This statement in *Sher* appears to have been based on Florida and California law, not on partnership law applicable in every state. Under Hawaii law, "[e]ach member of a joint venture acts individually and as agent for other members within the general scope of the enterprise or in furtherance of the business in which they are engaged." *Fujimoto v. Au*, 95 Hawai'i 116, 159, 19 P.3d 699, 742 (2001). Accordingly, under Hawaii law, it may be that, when one joint venturer commits a tort during the course and within the scope of the joint venture, every other joint venturer can be said to have sufficient minimum contacts for purposes of the specific jurisdiction

analysis under agency principles. *See Sher*, 911 F.2d at 1362 ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."). However, as Hawaii law has not directly addressed the issue, and because a decision on this issue is unnecessary to the outcome of this motion, this court does not decide this issue at this time.

**7.** Given the burdens on this motion to dismiss based on personal jurisdiction, Defendants cannot be said to have refuted the allegations that Rowe was Friedman and/or Lenders Depot's agent.

ing payment to that escrow company in Honolulu, Hawaii. Rowe's alleged attempt to purchase real property in Hawaii is sufficiently related to an actual purchase to allow this court to conclude that, given the facts alleged, Rowe purposefully availed himself of Hawaii's laws for purposes of Resnick's contract claims. Certainly the attempted purchase involved "contemplated future consequences" in Hawaii. *See Burger King*, 471 U.S. at 479, 105 S.Ct. 2174.

■ As Resnick has alleged that Rowe acted as Friedman and Lenders Depot's agent, Resnick has also demonstrated, for purposes of this motion, that, with respect to Resnick's contract claims, Friedman and Lenders Depot also purposefully availed themselves of Hawaii's laws. *See Sher*, 911 F.2d at 1362.

### B. *Arising out of Forum–Related Activities.*

■ The second requirement for specific jurisdiction is that Resnick's claim arise out of Defendants' forum-related activities. *See Panavision*, 141 F.3d at 1322. The court must determine whether Resnick would not have been injured "but for" Defendants' conduct directed toward him in Hawaii. *See id.* This requirement is satisfied. "But for" Defendants' negotiating in Hawaii and representing their financial strength in Hawaii, they would not have committed the alleged tort or entered into a contract with Resnick for the sale of the Golf Course Properties located in Hawaii. Resnick's claims arise out of these facts.

### C. *Reasonableness of Exercise of Jurisdiction.*

■ Even if a plaintiff satisfies the first two requirements for personal jurisdiction over a defendant, jurisdiction may not be exercised unless that exercise would be reasonable. *Id.; see also Ziegler*, 64 F.3d at 474–75 ("even if the first two prongs are satisfied, an unreasonable exercise of jurisdiction violates the Due Process Clause"). In determining reasonableness, the court considers: (1) the extent of purposeful interjection into the forum state; (2) the burden on the defendant; (3) the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the suit; (5) the most efficient judicial resolution of the dispute; (6) the convenience and effectiveness of relief for the plaintiff; and (7) the existence of an alternative forum. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174; *Ziegler*, 64 F.3d at 475. None of these seven factors is dispositive. Instead, all seven factors must be balanced. *Ziegler*, 64 F.3d at 475.

### 1. *Purposeful Interjection.*

The first factor the court examines is the extent of Defendants' purposeful interjection into Hawaii. "Even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Panavision*, 141 F.3d at 1323 (quoting *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993)); *but see Roth*, 942 F.2d at 623 ("In light of the first prong of purposeful availment, analysis of this first factor in the third prong would be redundant.").

It is undisputed that Defendants entered into a contract to purchase real property in Hawaii. During the course of the negotiations in Hawaii, Rowe, individually and as the alleged agent for Friedman and Lenders Depot, allegedly misrepresented that he and/or they had the money with which to purchase the properties. Rowe and Friedman also allegedly talked to the escrow officer in Hawaii regarding the wire transfer, providing her with tracking numbers that did not turn out to be real.

Even though the degree of intrusion into Hawaii was neither protracted nor intense, it is sufficient for this court to conclude that this factor weighs in Resnick's favor.

### 2. *Defendant's Burden in Litigating.*

In examining the second factor (the litigation burden), the court's primary concern is Defendants' burden. *See F.D.I.C. v. British–Amer. Ins. Co.,* 828 F.2d 1439, 1444 (9th Cir.1987). Here, Defendants will be burdened with defending this action thousands of miles from where they live. However, "unless the inconvenience [to the defendants of litigating in the forum state] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Panavision,* 141 F.3d at 1323 (internal quotation omitted). As the burden on Defendants and their out-of-state witnesses is significant, this factor weighs against this court's exercise of personal jurisdiction over them. However, the inconvenience of litigating in Hawaii does not amount to a deprivation of due process. *See Miracle,* 87 F.Supp.2d at 1069 (finding that requiring New York defendants and their potential witnesses to travel to Hawaii was not a deprivation of due process). In this "era of fax machines and discount air travel, requiring [Defendants] to litigate in [Hawaii] is not constitutionally unreasonable." *Panavision,* 141 F.3d at 1323.

### ·3. Conflict With Sovereignty of Defendant's *State.*

The court also considers the extent to which its exercise of jurisdiction in Hawaii would conflict with the sovereignty of California, Defendants' home state. Here, there has been no demonstration of any actual conflict with the sovereignty of California. This factor therefore presents no barrier to litigation in Hawaii and therefore weighs slightly in Resnick's favor. *See Pac. Fisheries,* 2000 WL 1670917, at *10 (D.Haw. Oct. 17, 2000); *United Kingdom Mut. S.S. Assurance Ass'n, Ltd. v. Cont'l Maritime of San Francisco, Inc.,* 1992 WL 486937, at *5 (N.D.Cal. Aug. 31, 1992) (stating that, because there was no conflict between Canadian law and U.S. law in that case, this factor weighed in favor of the exercise of specific jurisdiction).

### 4. *Forum State's Interest.*

The fourth factor—Hawaii's interest in this dispute—does not weigh for or against exercising jurisdiction over Defendants. Hawaii has a "strong interest in providing an effective means of redress for its residents who are tortiously injured." *Miracle,* 87 F.Supp.2d at 1070. Hawaii has a similar, albeit not as strong, interest in providing a means of redress for its residents who are injured because of a breach of contract. *Compare Roth,* 942 F.2d at 624 (forum state does not appear to have as strong an interest in protecting her residents in a contract case as in a tort case) *with Corporate Inv. Bus. Brokers v. Melcher,* 824 F.2d 786, 791 (9th Cir.1987) (forum state's interest in providing effective redress to its citizens injured by breach of contract supports exercise of jurisdiction). Here, none of the parties is a Hawaii resident. Hawaii therefore does not have the interest in this case that it would have if Hawaii were providing an effective means of redress for one of its citizens. However, even when the plaintiff is not a Hawaii resident, Hawaii has some interest, however slight, in preventing torts and breaches of contract in Hawaii. *See, e.g., Hughes v. Wal–Mart Stores, Inc.,* 250 F.3d 618, 621 (8th Cir.2001) (recognizing in the context of a choice-of-law analysis that a forum state has at least a slight interest in preventing torts against nonresidents). Under the present circumstances, the court finds this factor either neutral or very slightly in favor of the exercise of jurisdiction.

### 5. *Efficient Resolution.*

Efficient judicial resolution of the controversy focuses on the location of the evidence and witnesses. *Panavision,* 141 F.3d at 1323–24. This factor, however, "is no longer weighed heavily given the modern advances in communication and transportation." *Id.* Given that witnesses and evidence are located in Hawaii, California, and Oregon, this factor is neutral.

### 6. Convenient and Effective Relief for Plaintiff.

As Resnick is an Oregon citizen, Hawaii is not necessarily a more convenient forum for Resnick than Oregon or California. At most, some of the Resnick's evidence and witnesses (the real estate broker, escrow agent, prospective purchasers) are located in Hawaii. Additionally, there is no evidence or contention that Resnick would have more effective relief in Hawaii than some other forum. Under these circumstances, this factor is neutral.

### 7. *Alternative Forum.*

Resnick bears the burden of proving the unavailability of an alternative forum. *See Core–Vent,* 11 F.3d at 1490. Resnick has not demonstrated the unavailability of an alternative forum. Accordingly, this factor weighs slightly in favor of Defendants.

### 8. *Balancing and Application of the Factors.*

Overall, the balance of the seven factors is a wash. Only the second and seventh factors weigh in favor of unreasonableness, while the first and third favor Resnick. The remaining factors are either neutral or, in the case of the fourth factor, possibly slightly in Resnick's favor. The second and seventh factors are not so weighty as

to establish unreasonableness in the face of contravening and neutral factors. Accordingly, whether this action should be dismissed turns on what burdens are assigned to the parties with respect to the reasonableness of exercising jurisdiction.

The Supreme Court has stated that, when a defendant has purposefully directed activities at a forum plaintiff, that defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." [8] *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. The Ninth Circuit has reasoned that, when a defendant has purposefully directed activities at a forum state, personal jurisdiction in that jurisdiction is "presumptively reasonable." *Sher,* 911 F.2d at 1364. Based on this reasoning, this court has previously applied this presumption of reasonableness and required a nonresident defendant to demonstrate a "compelling case" of unreasonableness. *See Pac. Fisheries Corp. v. Power Transmission Products, Inc.,* 2000 WL 1670917, at *9 (D.Haw. Oct.17, 2000).

Although that earlier decision by this court involved a nonresident plaintiff and a nonresident defendant, the court in that case, in stating the burden, was not expressly addressing whether the degree of burden might be affected by the plaintiff's residence. Indeed, the decision in that case did not turn on whether the defendant's showing was compelling. In that case, this court found that the defendant had shown that only two factors favored a finding of unreasonableness. The court concluded that these factors did not rebut the presumption of reasonableness. Thus, the result in that case would have been the same even had the defendant been required to show unreasonableness by only a preponderance of the evidence.

---

**8.** Defendants attempt to place the burden of showing reasonableness on Resnick, without citing any authority directly providing for

that. *See* Memo in Support of Motion at 19; Reply at 12.

The effect of the plaintiff's nonresidence on the burden is an issue now before this court. The parties dispute whether the "compelling case" standard is applicable given Resnick's citizenship and residency in Oregon. Citing *Asahi Metal Indus. Co. v. Sup. Court of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), Defendants argue that courts should not apply the "compelling case" standard to a nonforum plaintiff. In *Asahi*, the Court examined whether an international defendant had had minimum contacts with California sufficient to justify a suit in California by another international plaintiff. In part of the opinion agreed to by seven justices, the Court did not explicitly refer to the "compelling case" standard. Instead, *Asahi* merely balanced the factors, concluding that,

> [c]onsidering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair.

*Id.* at 116, 107 S.Ct. 1026. From this language, it is unclear whether the *Asahi* court applied a "compelling case" burden.

While the question of whether the "compelling case" burden applies here is an interesting matter indeed, it is not determinative of the present motion. The court has found no substantive authority placing the burden of establishing reasonableness on the plaintiff when that plaintiff has demonstrated a defendant's purposeful availment. At a minimum, the burden, however defined, is on Defendants to show the unreasonableness of asserting personal jurisdiction over them. Defendants do not show unreasonableness even under a mere preponderance standard.

There is some authority for the proposition that, if the "compelling case" standard applies, it would require more than a preponderance of the evidence. In *Roth*, which involved a forum resident plaintiff, the Ninth Circuit balanced the factors and concluded that it was a close call. The court then determined that a close call was insufficient to satisfy the defendant's burden of demonstrating a "compelling case." *Roth*, 942 F.2d at 625. Similarly, in *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003), which also involved a forum resident plaintiff, the court held that, when the balancing of the factors was a "wash," the defendant had not met its "compelling case" burden. *Id.* at 1134.

This court need not determine either (a) whether the "compelling case" standard applies here or (b) the definition of "compelling case." When the court balances the seven *Burger King* factors, those factors are a wash. As Defendants have the burden of demonstrating unreasonableness and have not overcome Resnick's prima facie showing of personal jurisdiction over each Defendant as to each claim, Defendants' motion to dismiss based on personal jurisdiction is denied.

## IV. *VENUE.*

 Pursuant to 28 U.S.C. § 1391(a), A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought if it is in the interests of justice and convenient for the parties and witnesses.[9] *See also Lung v. Yachts Int'l, Ltd.,* 980 F.Supp. 1362, 1370 (D.Haw. 1997).

Pursuant to 28 U.S.C. § 1391(a)(2) and (3), venue in the District of Hawaii is proper. As Rowe (on behalf of himself, Friedman, and Lenders Depot) allegedly traveled to Hawaii, conducted negotiations in Hawaii, made alleged misrepresentations in Hawaii, and spoke with people in Hawaii regarding the sale of the Golf Course Properties, Resnick has shown that a substantial part of the events giving rise to Resnick's claims occurred in Hawaii for purposes of 28 U.S.C. § 1391(a)(2). Moreover, the court has already determined that Resnick has made a prima facie showing of personal jurisdiction for purposes of 28 U.S.C. § 1391(a)(3).

The court may nevertheless transfer this case under § 1404(a) based on the convenience of the parties and witnesses and the interests of justice. *Lung,* 980 F.Supp. at 1370. The court declines to transfer this case. "[T]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Miracle,* 87 F.Supp.2d at 1073. Defendants fail to make the required strong showing. At most, Defendants argue that it will be inconvenient and costly for them to litigate in Hawaii. *Id.* However, Resnick claims that many of his witnesses, including the real estate broker, escrow officer, and prospective buyers, live in Hawaii, making it more convenient for them. The convenience of the witnesses and parties and the interests of justice

therefore do not, on the present record, require that venue be transferred.

## V. CONCLUSION.

For the foregoing reasons, the motion to dismiss and/or transfer venue is denied.

IT IS SO ORDERED.

---

9. This statute partially displaces the common law doctrine of forum non conveniens. *Miracle,* 87 F.Supp.2d at 1073. While the relevant factors to consider are the same, the district court has broader discretion to transfer under section 1404(a) than under the forum non conveniens doctrine. *Lung v. Yachts Int'l, Ltd.,* 980 F.Supp. 1362, 1370 (D.Haw.1997).